CLIFFORD FOX, Appellant, v. THOMAS P. MCCURNIN, Appellee.

*S. B. Allen,* for appellant.

*Guy A. Miller,* for appellee.

ALBERT, J.—As above indicated, plaintiff pleaded four causes of action against the defendant, set out in separate counts in his petition. In the first count he pleaded assault and battery; second, false arrest; third, false imprisonment; and fourth, libel and slander. As heretofore noted, the fourth count was dismissed, and, on motion at the end of plaintiff's testimony, the first count was taken from the jury. The answer was a general denial.

The general history of the transactions out of which this action arose is about as follows: Fox was a tenant of a suite of rooms in the St. Elmo Apartments in the city of Des Moines,  Iowa, owned by the defendant. He had occupied these rooms for nearly two years. The rent was due monthly, and at the time in question, he was several months delinquent in the payment thereof. Fox was a traveling salesman by occupation, and was out of the city most of the time. He returned to the city on June 25, 1926, and on going to his apartment, was advised by the housekeeper in charge that he must pay his rent or move out. He advised her that he would pay the rent for the cur-

rent month, and would make some arrangements with the owner with reference to the overdue rent. The plaintiff left his apartment in the evening, going to see his mother at a hospital. He had personal property in the room at the time in question. He left the apartment about 8 o'clock on Saturday morning, and returned about 5 o'clock in the evening. The door knob had been taken from the door, which was locked. Mrs. Cosgrove, the woman in charge, told him that he would have to get in touch with Mr. Ferrier, who was an attorney, and had charge of the collection of rents for McCurnin. Fox called Ferrier by telephone, and told him he could pay the current month's rent, but not all of the rent that was in arrears. Ferrier told him that the rent must all be paid, or the door would "stay locked." He then told Ferrier that he would be back in about two hours, and expected the door to be open, and if it were not, he would find some way to get in. He returned in about two hours, and inquired if Ferrier had been there, and was told that he had been there, but had gone, and had not unlocked the door. At this time, Ferrier, McCurnin, and two other men were in another room, waiting for Fox to return. Fox told Mrs. Cosgrove that he was going to get in, some way. He went to the room, and found the door in the same condition. He says:

"I was there three or four minutes, trying some way to get in, when these four men rushed around the corner and attacked me. They came running. I recognized McCurnin. He cried, 'Kill him,—that's him,—get him, smash him,'—and proceeded to jump onto me. They struck at me with their fists, and said, 'Get him, smash him, kill him,—that is him.' I tried to get away, and ran down the hall, where I met another man standing at the top of the stairs. He tried to throw his arms around me, but I evaded him, and fell downstairs, and went through the door at the bottom of the stairs, into the street. I crossed the street, went east on Locust, and ran to the Masonic Building, and stopped. The man who tried to stop me at the head of the stairs ran after me. I walked east to Sixth and Locust, and went north. My hat was knocked off in the scuffle in the apartment, and a bundle of laundry knocked out of my arm. When I got to Sixth and Locust, someone whistled and yelled at me, and I turned around, and the traffic policeman [Fetters] was motioning to me to stop. I stopped, and Police-

man Fetters, with McCurnin, came up to me, and wanted to know what was the matter. I tried to explain, and McCurnin said: 'Arrest him; take him down.' They took me to Hyman's Book Store, on Sixth Street, just above Locust, and called the patrol. They put me in, and McCurnin left afterwards. They took me to the police station to the bulletin room, and put my name on the book, and the time I was arrested. Then McCurnin came in. Captain Sheehan wanted to know what was the matter, what he was going to do, and he asked Captain Sheehan to lock me up. He told him I had attempted to break and enter his apartment. Captain Sheehan said to file an information right then, but he said he would do it Monday morning. Then McCurnin went into the private office, and shut the door. They were there about ten minutes, and came out, and the captain said, 'Lock him up.' He said they were booking me for investigation. They searched me, and put me in a cell about 8 o'clock at night, and locked me up.''

Some further testimony may be referred to later; but the first question raised is alleged error of the court in taking from the jury the first count,—to wit, the assault and battery charge. In reviewing this error, of necessity we must take the testimony in its most favorable light to the plaintiff. The above recitation of the material part of the testimony is taken from the evidence of the plaintiff. At this point in the case, we are of the opinion that the court erred in taking the question of assault and battery from the jury, as the evidence above recited, in our opinion, was sufficient to take this question to the jury.

Several other assignments of error are made, most of which do not comply with our rules, and will not be given attention. One assignment, however, is entitled to attention, and that is  an alleged erroneous ruling on testimony. After the plaintiff testified that he was confined in the jail, he was asked the question whom he found in the jail, and also, to describe the condition of the room in the jail where he was placed. Objections to these questions were sustained. Of course, we cannot assume what the answers to either of these questions would have been, and the plaintiff did not state into the record what he expected they would be. Under such circumstances, the ruling was not erroneous; although the court might well have allowed the answers,

and, had they shown that the same was not material, they could have been stricken. It seems to be permissible in such cases to show the condition of the jail, and if it were in a filthy or un-inhabitable condition, the same would be taken into consideration in determining the damages. 25 Corpus Juris 557, Section 170; 11 Ruling Case Law 820, Section 35; *Stoecker v. Nathanson*, 5 Neb. (Unofficial) 435 (70 L. R. A. 67).

Another error which is entitled to attention is an attack on an instruction which reads as follows:

"The burden of proof in this case is upon plaintiff, and before he can recover anything from the defendant, McCurnin, he must establish by a preponderance or greater weight of the evidence all of the following propositions, numbered 1 to 4, inclusive.

"First: That the plaintiff was arrested and imprisoned without a warrant, and without having committed a public of-fense, or without having attempted to commit a public offense in the presence of the officer making the arrest.

"Second: That there was no reasonable ground for believing that plaintiff had committed a public offense.

"Third: That the arrest and imprisonment was caused by the defendant, Thomas P. McCurnin, and that the plaintiff was released without any information or charge, having been filed against him.

"Four: That plaintiff has been damaged in some amount thereby.

"If you find affirmatively, by a preponderance or greater weight of the evidence, as to each and all of the foregoing propositions, then your verdict will be for the plaintiff in such an amount as you find he is entitled to recover, under the evidence and these instructions."

In a later instruction it was said, among other things:

"It was required that the plaintiff prove by a preponderance of the evidence that the plaintiff himself had committed no public offense, or had not attempted to commit a public offense in the presence of Thomas P. McCurnin, or that the defendant, Thomas P. McCurnin, did not have reasonable ground for believing that the plaintiff, Fox, had committed a public offense."

It is apparent from these instructions that, under the facts in this case, plaintiff had the burden of proof of showing that no

public offense had been committed, or that McCurnin had no  reasonable ground to believe that a public offense had been committed. Plaintiff's evidence shows that he was arrested and incarcerated in jail at the instance and request of McCurnin, and that no warrant was ever issued, nor was any information filed after the arrest. The question, therefore, is whether, under this situation, the plaintiff had this burden placed upon him by these instructions.

What is false imprisonment?

Bishop on Non-contract Law, Section 206, says:

" * * * any unlawful physical restraint by one of another's liberty, whether in a prison or elsewhere * * * " is false imprisonment.

3 Blackstone's Commentaries (2d Ed.) 127, says:

"Every confinement of the person is an imprisonment, whether it be in a common prison, or in a private house, or in the stocks, or even by forcibly detaining one in the public streets."

Addison on the Law of Torts 552, Section 2, says:

"False imprisonment is a trespass committed by one man against the person of another by unlawfully arresting him and detaining him without any legal authority."

Cooley on Torts (2d Ed.) 195 says:

"False imprisonment is a wrong akin to the wrongs of assault and battery, and consists in imposing by force or threats an unlawful restraint upon a man's freedom of locomotion."

From these definitions it is apparent that any unlawful restraint of an individual's personal liberty or freedom of locomotion against his will comes within the definition of false imprisonment. It is also apparent, under these definitions and the facts in this case, that, although plaintiff has alleged false arrest in Count 2, and false imprisonment in Count 3, they are not distinguishable, and therefore amount only to a charge of false imprisonment, and do not state distinct causes of action.

Section 13465, Code of 1924, provides:

"Arrest is the taking of a person into custody when and in the manner authorized by law, * * * "

"13468. A peace officer may make an arrest in obedience to a warrant delivered to him; and without a warrant:

"1. For a public offense committed or attempted in his presence.

"2. Where a public offense has in fact been committed, and he has reasonable ground for believing that the person to be arrested has committed it."

It is conceded in this case that no warrant was issued for the arrest of the defendant. It was also conceded that no public offense was committed or attempted in the presence of the officer. The question, therefore, remaining is whether, under the second subdivision of Section 13468, a public offense was committed and the peace officer had reasonable ground to believe that the person to be arrested had committed it. We are not interested in the question where the burden of proof is when the officer has a legal warrant under which he acts. That question is reviewed in *Wilson v. Lapham*, 196 Iowa 745.

·The question is, where an officer has no warrant, whether the plaintiff has the burden of showing that the arrest was unlawful, or whether the burden is upon the officer to justify his act. We have had occasion in two Iowa cases to touch upon this question. See *Stewart v. Feeley*, 118 Iowa 524, and *Snyder v. Thompson*, 134 Iowa 725. In the latter case we approved a quotation from *Hicks v. Faulkner*, 8 Q. B. D. 167, as follows:

" * * * in false imprisonment the onus lies upon the defendant to plead and prove affirmatively the existence of reasonable cause as his justification * * * ."

After reciting authorities from other states, we approved 2 Bishop on Criminal Procedure (3d Ed.), Section 368, where it is said:

"In matter of evidence, if the imprisonment is proved, its unlawfulness will be *prima facie* presumed. But authority may be shown by the defendant in justification, or it will be equally effectual if it appears among the proofs against him."

The rule is also recognized in *Stewart v. Feeley*, supra.

In *Hobbs v. Illinois Cent. R. Co.*, 182 Iowa 316, 342, citing the *Stewart* case, we said:

"It is also said that the court was in error in placing the burden upon defendants of showing that the first arrest of plaintiff, if made as charged, was justifiable. There was no error here."

We also cited, as sustaining, *Jackson .v. Knowlton*, 173

Mass. 94 (53 N. E. 134). In the *Jackson* case, the officer acted without a warrant, and the Massachusetts court said:

"It was long ago said by Lord Mansfield: 'A gaoler, if he has a prisoner in custody, is *prima facie* guilty of an imprisonment, and therefore must justify.' "

The case then quotes from Chief Justice Best:

" 'Where a man deprives another of his liberty, the injured party is entitled to maintain an action for false imprisonment, and it is for the defendant to justify his proceeding by showing that he had legal authority for doing that which he had done.' "

Quoting from *Bassett v. Porter*, 10 Cush. (Mass.) 418, Mr. Justice Metcalf says:

"Every imprisonment of a man is *prima facie* a trespass, and, in an action to recover damages therefor, if the imprisonment is proved or admitted, the burden of justifying it is on the defendant."

It would appear, therefore, under our holdings and the fundamental principles governing cases of this character, that, where the officer acts without a warrant, the burden of proof is upon him to justify his action. It is to be noted that the officer, however, is not a party defendant herein, but the property owner, McCurnin, is being sued for this false imprisonment; and, if such existed, and the imprisonment was brought about by the acts and conduct, or at the instance and request, of the defendant, McCurnin, he would be liable therefor. We have so held in *Young v. Gormley*, 120 Iowa 372; *Buseman v. Schultz*, 154 Iowa 493; and *Hobbs v. Illinois Cent. R. Co.*, supra.

One who instigates or directs the unlawful arrest or detention of another, or causes or commands or instigates the other to do the wrong, if it results in false imprisonment, is liable therefor. 25 Corpus Juris 499, and cases there cited.

It follows, therefore, that the complaint lodged against the instructions was legitimate, as, under the circumstances in this case, the burden was upon the defendant to justify the imprisonment; and all plaintiff needed to do, to make a prima-facie case, was to prove the imprisonment and his damages, and the defendant was then called upon to assume the burden of proving justification, whatever it may have been. Under our holdings,

Counts 2 and 3, therefore, state but one cause of action, and the court erred in its instructions, as set out above.—*Reversed.*

STEVENS, C. J., and FAVILLE, MORLING, and WAGNER, JJ., concur.