J. MILTON NORTON, Appellant, v. DARYL C. MATHERS et al., Appellees.

No. 43727.

FEBRUARY 9, 1937.

Ralph H. Munro, for appellant.

Comfort & Comfort, James P. Irish, T. L. Brookhart, and Carlton C. Wilson, for appellees.

PARSONS, J.—Plaintiff, appellant herein, filed suit in the district court of Washington County, Iowa, against Daryl C. Mathers as sheriff of said county, for false arrest and false imprisonment in the county jail at Washington, Iowa, from the 12th of September, 1934, to the 15th of said month, stating that he had suffered and sustained damages to his reputation, shame and mental suffering, loss of time, and expenses, in the total sum of $5,000, no part of which had been paid. He alleged his arrest was without any warrant, and without just cause, and that he had committed no offense in the presence of the sheriff, or at any other time.

In his petition plaintiff alleged that when the defendant Daryl C. Mathers became sheriff of Washington county, Iowa, on or about the 4th of August, 1934, he posted a bond with the county auditor of said county in the penal sum of $5,000, with the Massachusetts Bonding and Insurance Company as surety; said. bond conditioned that Mathers would faithfully and impartially discharge the duties of his office as required by law; that the said arrest and imprisonment were wilful, wanton and without just cause, and constituted oppression in office by the said defendant Mathers.

In answer to plaintiff's petition the defendants admitted defendant Mathers gave a bond as sheriff of Washington County, Iowa, with the defendant Massachusetts Bonding and Insurance Company as surety; that on or about the 12th of September, 1934, while sheriff, the said Mathers arrested plaintiff and placed him in the county jail where he remained until the 15th of September, 1934; but they denied that said arrest and imprisonment were done in a wilful, wanton or offensive manner or without just cause, but that the sheriff acted in good faith in the belief that he was performing the duties of his office. That he had just cause to believe and did in good faith believe that the plaintiff was guilty of stealing a large amount of property from Washington county, Iowa, and that said property was found in plaintiff's possession on the farm he occupied, at the time of his arrest.

In a second amendment to their answer, the defendants al-

leged that upon plaintiff's confinement in the jail the plaintiff was informed by the sheriff that he could have an immediate preliminary hearing, but that the grand jury was then in session and investigating his case, and that under the circumstances the magistrate would no doubt bind him over to the grand jury should a hearing be had before him; that plaintiff stated he did not want to be taken before a magistrate, but would await the action of the grand jury, and that plaintiff thereby voluntarily remained in the custody of the sheriff up to the 15th of September, 1934, when the grand jury returned no indictment against him. The defendants alleged that thereby the plaintiff waived his right to any cause of action against the defendants for his detention, and is estopped from claiming damages therefor. Such were the issues made by the parties. It will thus be seen that by the pleadings defense set up was merely a justification on the part of the defendant. There was no plea whatever in mitigation, such as is provided for in sections 11172 and 11173.

Daryl C. Mathers, defendant, was called by plaintiff to testify, and testified that in August 1934, he took office as sheriff of Washington county, and continued to hold office until a few days after the election of the same year; that he first became acquainted with Milton Norton, plaintiff, September 12, 1934, while he was living on a farm in Van Buren county; that he caused plaintiff's arrest; that he had him detained by the sheriff at Albia; that he went to Albia and arrested plaintiff, who was in his own car; that Mathers told plaintiff to drive his car to Washington, told him where to turn, and brought him to the sheriff's office in Washington county, and took him to jail, on the evening of September 12, 1934; that he was kept there until he was released by the grand jury; that he did not know whether any information was filed against the plaintiff.

On cross-examination, sheriff Mathers said that when he got to Albia he found plaintiff there, but not his father, who was attending a sale south of Albia; that the Monroe county sheriff got William Norton and brought him in; that Mathers then told the Nortons he had been down to their farm and had found property belonging to Washington county, and that was the reason he was having them arrested. Mathers said Edgar Porter was with him when he went down to make the arrest and was present in the office when they had these conversations, and he took Porter and William Norton in his car, and directed plaintiff to drive

his own car ahead of him to Washington. Mathers claimed that the next morning he discussed the matter with the county attorney, who directed him to go and tell the plaintiff he could have an immediate hearing but that the grand jury was in session investigating this case and he would know in a day or two or three what the status was, and that in his judgment the evidence in his hands was such that all the magistrate would do would be to bind plaintiff over to the grand jury; that he claims when he told the plaintiff this plaintiff said he didn't care for a preliminary hearing before a justice, but would just await the action of the grand jury; that plaintiff never made any demand or request after that for a preliminary hearing before a justice, and he was held in jail until the 15th of September, 1934, and released upon orders of the county attorney. Mathers admitted he did not take plaintiff before any magistrate or justice in Van Buren county, Monroe county or Washington county.

Plaintiff testified that he lived at Stockport, Iowa, on a farm in Van Buren county, about forty miles from Washington and was living there in September, 1934, and had been living there since March, 1932. That he had a baby daughter born in July, 1934; that the farm belonged to his father and mother, and he was renting it on a fifty-fifty basis.

Plaintiff testified that on September 12th he went to a cow sale in Albia, and saw the defendant sheriff in Albia about three o'clock in the afternoon; that the sheriff directed him to accompany him to Washington; that it was quite dark when they reached there. He testified that he was taken to the sheriff's office in Washington, and plaintiff's father asked for a hearing, and the sheriff said he would see. Plaintiff was then taken over and put in jail; that the sheriff said nothing to him there, or after they arrived at the jail; that he never talked with the sheriff until a week or so after when he went down with the hired man to see about getting wages while he was in jail; that the only conversation he had with the sheriff was when he told plaintiff about noon he would be released that evening; that no one said to him while he was in jail that he could or could not have a preliminary hearing, and nothing was said to him about the grand jury being in session.

He further testified that when they got back to Washington and went to the sheriff's office he did not demand the sheriff to take him before a magistrate, but his father asked for a hearing.

The sheriff said he would go and see, and when he came back he said he got in communication with Morrison but he couldn't see them until the next morning. Plaintiff stated he was 28 years old.

Plaintiff admitted he had an anvil on the farm for awhile; that it was given him by his father. That on July 18th Harold Putnam, deputy sheriff of Washington county, came down to see him about the anvil, and told plaintiff if he didn't get the anvil he would go to jail, so plaintiff claims he borrowed a man's car and went after the anvil. He stated his father had told him to conceal the anvil, but he did not know anything more about it; that there were some other articles on the farm, dynamite, extension ladders, etc., that belonged to his father, that were claimed by Washington county, and were taken on the search warrant. He claimed some of the stuff belonged to his father; that it was not in his possession, but had been moved down in July when his folks moved down on the farm. Plaintiff testified that he did not know there was anything there that did not belong to his father. He testified that his father gave him the anvil, and said some old pieces of plank were given to him; that before the anvil was taken away the board of supervisors of Washington county had been down there, that they were talking about the planks and the extension ladders, but did not mention the anvil; they said they thought the things belonged to Washington county. Plaintiff said he knew the ladders did, because they borrowed them several times; that they had been down there and back several times; but he did not know to whom the planks belonged.

Several other witnesses testified in the case, but their testimony was not material on the question now before the court, except as to the plaintiff being in jail.

The defendant had been sheriff for only a short time, having been appointed in August, 1934, and these matters happened in September following. He alleged he found out about the anvil being on the farm from Putnam, the deputy sheriff, and knew that the deputy had been out to the farm, and that plaintiff had at first denied having the anvil. Defendant also testified that the plaintiff did not have a preliminary hearing, but merely asked to see the county attorney, Morrison, and that he did not ask the county attorney for a preliminary hearing; that he was not with Putnam when he went after the anvil, and had no per-

sonal knowledge of the transactions, so what knowledge he had was from the deputy.

There was introduced in evidence, over the objections of the defendants, a proceeding in district court of Washington county, Iowa, against W. J. Norton, father of plaintiff. The proceedings were the trial on indictment of the father of plaintiff over the property claimed to belong to the county, and found on the Norton farm. The father was convicted and sentenced to be confined in the county jail for six months, and pay a fine of $300; that W. J. Norton had been employed as farm manager of the Washington County Home between 1926 and 1934, and the grand jury had indicted him for converting to his own use, without the consent of his employer, certain property of the county.

At the conclusion of all the testimony defendant made a motion for a directed verdict, based upon the proposition that the defendant had complied with the provisions of section 13468 of the code of Iowa; (2) that plaintiff failed to show by any competent evidence that the arrest and confinement complained of were unlawfully made; (3) the evidence showed that Mathers was the duly qualified and acting sheriff of Washington county at the time of making the arrest, and that at said time a public offense had been committed in Washington county, and he had reasonable grounds to believe plaintiff had committed an offense. The court sustained the motion to instruct the jury to return a verdict in favor of the defendants, and from this the appeal is taken to this court.

This case is a case of false arrest and imprisonment, and not a case for malicious prosecution. The arrest in this case was made without a warrant. Section 13468 provides as follows:

"A peace officer may make an arrest in obedience to a warrant delivered to him; and without a warrant:

1. For a public offense committed or attempted in his presence.

2. Where a public offense has in fact been committed, and he has reasonable ground for believing that the person to be arrested has committed it."

It is true, peace officers are authorized to make arrests without a warrant in certain cases. Conceding that the sheriff had the right to make the arrest as he made it, and without a warrant, this does not solve the difficulties of the defendant in this

1176

case. Without going into the question of whether or not the defendant could act outside his own county, of which he was sheriff, there are other provisions of the code which govern arrests made under these circumstances.

Chapter 623 deals with what shall be done when one is arrested without a warrant. Section 13488 is as follows:

"Disposition of prisoner. When an arrest is made without a warrant, the person arrested shall, without unnecessary delay, be taken before the nearest or most accessible magistrate in the county in which the arrest is made, and the grounds on which the arrest was made shall be stated to the magistrate by affidavit, subscribed and sworn to by the person making the statement, in the same manner as upon a preliminary information, as nearly as may be."

There was no attempt to comply with this provision of the statute. It is not to be wondered at; the sheriff was just new in the office. This section requires a person arrested to be taken without unnecessary delay before the nearest or most accessible magistrate in which county the arrest is made; the cause of arrest shall be made known to the magistrate by affidavit subscribed and sworn to by the person making the statement. The next section then provides that if the magistrate believes from the statement of the affidavit that the offense is triable in the county in which the arrest is made, and there is ground for trial or preliminary examination, he shall order information filed against the one arrested.

In this case, however, it clearly appears that the offense, if any, for which the plaintiff was arrested, was committed either in Van Buren county or in Washington county, and perhaps there might be enough evidence to show that the plaintiff, although living in Van Buren county, in acting under the directions of his father in concealing the anvil, would be triable in Washington county because that is the county from which the property was taken, and in which it was embezzled by plaintiff's father. But under section 13492, provision is made, after he has been taken before the magistrate in the county where arrested, for the magistrate to order the arrested party to be taken before the magistrate in the county in which the offense is triable, and fix the amount of bail, along with other provisions not necessary to discuss here.

None of these things were done by the sheriff. From the evidence the jury might find that the plaintiff was arrested in Monroe county, and that he was imprisoned in another county, and so it was illegal and false imprisonment. The law does not demand that the party arrested ask to be taken before the magistrate, but makes it the duty of the one making the arrest to take the prisoner before a magistrate. In this case, if plaintiff was arrested in Monroe county he should have been taken before the magistrate of that county, in observance of the steps pointed out in the foregoing sections.

The jury might find in this case, and it was a question for the jury, that plaintiff was arrested in Monroe county but was taken promptly to Washington county; that he was given no chance to have a hearing in Monroe county; that he arrived in Washington county in the evening, and he was put in jail. There is a conflict in the evidence as to what happened after he got to Washington county. It is the claim of plaintiff he was not given an opportunity to go before the magistrate; that he was kept in jail three days, and told that the grand jury was in session and investigating his case, and at the end of the three days he was turned loose. There was claim on the part of the sheriff, from which the jury might find there was a waiver of the defendant's right to go before the magistrate. But be this as it may, it was and is a jury question, and the court should have submitted this case to a jury. This is not a case of malicious prosecution, it is a case, if any, of false arrest and false imprisonment. There is an illuminative illustration in Fox v. McCurnin, 205 Iowa 752, 757, 218 N. W. 499, 501, written by Judge Albert, an able judge of this court, and decided in March, 1928. In that he discusses what is false imprisonment, and holds, " '* * * any unlawful physical restraint * * *' is false imprisonment," as set forth in Bishop on Non-Contract Law, section 206. "3 Blackstone's Commentaries (2d Ed.) 127, says: 'Every confinement of the person is an imprisonment, whether it be in a common prison, or in a private house, or in the stocks, or even by forceably detaining one in the public streets.' Addison on the Law of Torts, 552, section 2, says: 'False imprisonment is a trespass committed by one man against the person of another by unlawfully arresting him and detaining him without any legal authority.' Cooley on Torts (2d Ed.) 195 says: 'False imprisonment is a wrong akin to the wrongs of assault and battery,

and consists in imposing by force or threats an unlawful restraint upon a man's freedom of locomotion.'" After citing these authorities, Judge Albert says,

"From these definitions it is apparent that any unlawful restraint of an individual's personal liberty or freedom of locomotion against his will comes within the definition of false imprisonment," citing section 13465 of the Code, which says:

"Arrest is the taking of a person into custody when and in the manner authorized by law, * * *"".

It will be seen that the defendant having been arrested in Monroe county, not having been taken before the nearest or most accessible magistrate, and having then been taken by the sheriff to Washington county and kept in jail three days, without a hearing, and without having waived any of these rights, the plaintiff was unlawfully arrested and unlawfully imprisoned. We know that officers charged with enforcing the law do, many times, fail to observe the requirements of the statutes, in their zeal to get the criminal, but whenever this is done, when the statutes are not followed, and the rights such as are here pointed out, are disregarded, it is always either a question of the court instructing the jury in plain language, where the facts are undisputed, that the arrest is false, or it is a question for the jury, if there is conflict in the testimony.

In the Fox case the court also cites Hobbs v. Ill. Cent. Ry. Co., 182 Iowa 316, at page 342, 165 N. W. 912, 919, wherein it is said:

"It is also said that the court was in error in placing the burden upon defendants of showing that the first arrest of plaintiff, if made as charged, was justifiable. There was no error here."

In other words, if the arrest does not follow the law, it is unjustifiable, it is a false arrest, and if imprisonment follows, the plaintiff has not been treated as the statute provides, i. e., taken before a magistrate, and ordinarily, and in this case, it was a question for the jury, and the court was in error in not sending the case to the jury. This conclusion finds support in Young v. Gormley, 120 Iowa 372, 94 N. W. 922; Stewart v. Feeley, 118 Iowa 524, 92 N. W. 670; Holmes v. Blyler, 80 Iowa 365, 45 N. W. 756.

The point is raised, however, in this case, that the party making the arrest had to have personal knowledge of the crime committed. The defendant had the statement of his deputy, as to the hiding of the anvil by plaintiff on the request of his father; taking it away several miles and depositing it in a secret place; of his denying any knowledge of the whereabouts of the anvil until threatened to be taken to jail, and of his taking a car and getting the anvil where he had hidden it. These things, it seems to us, would be things, if the case were tried, that would authorize the trial court to give instructions that, so far as this branch of the case was concerned, the defendant had a right to act on it, or at least it was a question for the jury as to whether or not the defendant did have a right so to act.

As to where the actual arrest took place, the jury might possibly find that it took place either in Monroe county or Washington county. True, the sheriff said he arrested the plaintiff in Monroe county, but further evidence shows that all he did was to ask the plaintiff to drive his car to Washington, and when he got to Washington he was incarcerated. The testimony also fails to show any arrest was made in Van Buren county. But in which ever county arrested, the arrest was without warrant, and therefore it was the duty of the sheriff making the arrest to take the plaintiff before the nearest and most accessible magistrate in which the arrest was made.

For these reasons the lower court erred in sustaining the motion for directed verdict, and the decision is reversed.—Reversed.

RICHARDS, C. J., and MITCHELL, STIGER, HAMILTON, KINTZINGER, and DONEGAN, JJ., concur.