**Gene Raymond RIFE, Jr., Appellant,**

v.

**D.T. CORNER, INC. d/b/a Papa's Planet, Centurion Security Services, Inc. a/k/a CSSI, Appellees.**

No. 00–0184.

Supreme Court of Iowa.

Feb. 27, 2002.

Zorica Ilic of the Sporer Law Firm, P.C., Des Moines, for appellant.

Thomas I. Henderson and John F. Fatino of Whitfield & Eddy, P.L.C., Des Moines, for appellee D.T. Corner, Inc.

Gerry M. Rinden of Wintroub, Rinden, Sens & McCreary, Des Moines, for appellee Centurion Security Services, Inc.

CADY, Justice.

The fighting issue presented in this action for assault and battery and false imprisonment is whether a citizen's arrest perfected by numerous persons acting in concert can be lawful when there is no evidence that the person who first made the arrest observed the commission of a public offense. The district court overruled the plaintiff's motion for directed verdict and motion for judgment notwithstanding the verdict following a jury verdict for the defendants. We transferred the case to the court of appeals. It reversed the district court judgment, and ordered a new trial on the false imprisonment claim. On further review, we vacate the decision of the court of appeals and affirm the judgment of the district court.

## I. Background Facts and Proceedings.

Childhood friends Gene Rife and Steven Johnson met at the Hickman Pub after work on the night of August 13, 1998. After sharing three pitchers of beer, they left the pub and went to the Court Avenue district in downtown Des Moines. They decided to visit a nightclub called "Papa's Planet." The nightclub was owned by D.T. Corner, Inc.

Papa's Planet charged patrons a five-dollar fee, or cover charge. Several employees of the club were stationed at the entrance to collect the fee, and additional employees supervised the activities of the patrons. The employees who provided supervision were called "bouncers." Papa's Planet also contracted with Centurion Security Services, Inc. for additional security. This company provided security personnel for several Court Avenue establishments. The security officers generally patrolled the area and could be contacted by Papa's Planet employees by radio transmitters.

Rife and Johnson entered the club without paying the cover charge. They both claimed the doorman gave them permission to enter without paying so they could look around to see if they wanted to stay. However, bouncers stationed at the door were told the two men simply entered without paying the charge. A bouncer approached Rife and Johnson in the club and asked them to return to the entrance

to pay the cover charge. Additionally, security personnel from Centurion were summoned.

Rife and Johnson returned to the entrance of Papa's Planet where they were met by two Centurion security officers, as well as Papa's Planet employees Matt Miller, Jeff Blaine, and John Elkin. The two security officers were Todd Habick and Dan Kite. As Rife was walking out, he lowered his shoulder into Miller's back. Rife then began complaining to Kite about the manner in which the club employees were treating him. He also began pointing a finger in Kite's face while shouting profanities. After Rife ignored Kite's repeated requests to step back, Kite pushed Rife away from him. Rife responded by throwing punches at Kite. Blaine then attempted to gain control of the escalating situation by grabbing Rife from behind. Rife momentarily escaped Blaine's grasp and attempted to strike Blaine on his backside. Before Rife could do so, however, Habick sprayed the chemical Mace® on Rife to stop the attack.

After the Mace® was used, Rife started to run from Papa's Planet. Numerous employees of the nightclub and the two security officers pursued him. The chase ended several hundred feet from Papa's Planet when Matt Wharff, a club employee, caught up with Rife and restrained him. Habick then placed handcuffs on Rife and informed him law enforcement personnel would be arriving shortly. Rife was never informed he was under arrest or the reason for the detention.

Rife was detained until law enforcement officers arrived. Neither Rife nor any of the individuals involved in the detention of Rife were charged with committing a crime. Des Moines police officers released Rife after questioning him for a brief period of time.

Based on the incident, Rife brought an action for damages against Papa's Planet and Centurion Security Services, Inc. on numerous grounds, which were eventually reduced to assault and battery and false imprisonment. The defendants answered the petition generally denying its allegations. Papa's Planet also advanced affirmative defenses, including acquiescence, assumption of the risk, and defense of property and business invitees.

One week prior to the commencement of trial, the defendants filed motions for leave to amend their answers to add the affirmative defenses of citizen's arrest and self-defense. Rife resisted the motions, claiming the amendments would substantially change the issues. The district court granted the motions.

At trial Rife, Johnson, Blaine, Miller, Elkin, Habick, and Kite testified to the events of the night of August 13, 1998. However, Wharff, the employee who first stopped and detained Rife, had enlisted in the Navy a few months after the incident and, consequently, was unavailable to testify at trial or submit to a deposition. Nevertheless, Habick described the chase at trial and Wharff's actions in restraining Rife. Wharff led the chase of Rife, while Habick was immediately behind Wharff. When Wharff caught up with Rife, he wrapped his arms around Rife and asked Rife to acquiesce. After Rife continued to resist, Wharff picked him up and took him to the ground. Habick further testified that Rife resisted Habick while he attempted to handcuff Rife. Furthermore, Blaine's testimony supported Habick's version of events. Although Blaine arrived on the scene a few seconds after Habick and did not see Wharff's initial restraint of Rife, Blaine did witness Wharff bringing Rife to the ground.

Habick and Blaine testified they pursued Rife for the purpose of detaining him

for law enforcement officers. They observed Rife commit at least one, if not three, assaults on the premises of Papa's Planet on August 13.

At the close of the evidence, Rife moved for a directed verdict on the false imprisonment claim. He contended the evidence at trial showed without dispute that Rife was detained against his will and that the defendants could not justify the detention based upon a citizen's arrest because they failed to present evidence showing Wharff witnessed Rife commit a public offense. Rife also argued he was entitled to a directed verdict on his assault and battery claim because the affirmative defense of self-defense asserted by the defendants was not available based on the evidence that Rife retreated after his alleged assault. The district court overruled the motion for directed verdict.

The district court instructed the jury on Rife's claim of false imprisonment. It also instructed the jury that private persons may lawfully arrest another person under certain circumstances, and that a lawful citizen's arrest was an affirmative defense to the claim of false imprisonment. It further instructed the jury that Rife could not recover on his claim of false imprisonment if the defendants had established a citizen's arrest.

The jury returned a verdict in favor of both Centurion and Papa's Planet. Rife subsequently filed a combined post-trial motion. In a motion for judgment notwithstanding the verdict, Rife renewed his claim for a directed verdict on the false imprisonment theory, but did not raise the assault and battery theory. In a motion for new trial, Rife claimed the court erred in granting the defendants' untimely request to add the affirmative defenses of citizen's arrest and self-defense. The court denied both motions.

Rife appealed and raised two issues. He claimed the district court abused its discretion in permitting the defendants to file amendments to their answers. Furthermore, Rife contended that the court erred in denying his motion for directed verdict and motion for judgment notwithstanding the verdict.

We transferred the case to the court of appeals. It held the district court erred in denying the directed verdict motion, and reversed and remanded for a new trial against Papa's Planet on the false imprisonment claim. The court of appeals found Papa's Planet failed to introduce substantial evidence on each element of the citizen's arrest defense. It found insufficient evidence to support the defense of citizen's arrest because there was no testimony that Wharff observed Rife commit a public offense.

Papa's Planet sought further review. We granted the application.

## II. Standard and Scope of Review.

▪ We afford district courts considerable discretion in ruling on motions for leave to amend pleadings. *Davis v. Ottumwa YMCA*, 438 N.W.2d 10, 14 (Iowa 1989). Consequently, we will reverse only if the record indicates the court clearly abused its discretion. *Id.; Ellwood v. Mid States Commodities, Inc.*, 404 N.W.2d 174, 179 (Iowa 1987). We will find an abuse of discretion when the court bases its decision on clearly untenable grounds or to an extent clearly unreasonable. *McElroy v. State*, 637 N.W.2d 488, 495 (Iowa 2001); *Davis*, 438 N.W.2d at 14.

▪ We review the denial of a motion for directed verdict for errors at law. *McClure v. Walgreen Co.*, 613 N.W.2d 225, 230 (Iowa 2000). When ruling on the motion, the court must consider the evidence in a light most favorable to the party against whom the motion is directed. *Id.;*

*Kraft v. City of Bettendorf,* 359 N.W.2d 466, 469 (Iowa 1984). If each element of the claim is supported by substantial evidence in the record, the court must overrule the motion. *McClure,* 613 N.W.2d at 230; *Lamb v. Manitowoc Co.,* 570 N.W.2d 65, 68 (Iowa 1997). Moreover, if reasonable minds could deduce different inferences from the evidence presented, the court must submit the issue to the jury. *McClure,* 613 N.W.2d at 230.

### III. Preservation of Error.

 Rife did not challenge the district court's failure to direct a verdict on the assault and battery claim in his motion for judgment notwithstanding the verdict. It is well settled that a motion for judgment notwithstanding the verdict serves to afford the district court an opportunity to correct any error in failing to direct a verdict. *Bangs v. Maple Hills, Ltd.,* 585 N.W.2d 262, 268 (Iowa 1998); *Meeker v. City of Clinton,* 259 N.W.2d 822, 827 (Iowa 1977); *see* Iowa R. Civ. P. 243(b) (judgment notwithstanding verdict). Additionally, Rife failed to state in his brief how this issue was preserved for our review. *See* Iowa R.App. P. 14(a)(5) (appellant must state how issue was preserved for each argument); *State v. Rodriquez,* 636 N.W.2d 234, 246 (Iowa 2001) (finding issue waived where party "failed to state in his brief how error was preserved on th[e] issue"). Consequently, we confine our review to the false imprisonment claim and the motion to amend the answer.

### IV. Amended Answer.

 Iowa Rule of Civil Procedure 69(d) governs the amendment of pleadings. This rule instructs district courts to freely grant leave to amend when required by the interests of justice. Iowa R. Civ. P. 69(d); *Davis,* 438 N.W.2d at 14. Generally, a party may amend a pleading at any time before a decision is rendered, even after the close of the presentation of the evidence. *Ackerman v. Lauver,* 242 N.W.2d 342, 345 (Iowa 1976). As long as the amendment does not substantially change the issues or defense of the case, the court should permit the amendment. *Glenn v. Carlstrom,* 556 N.W.2d 800, 804 (Iowa 1996); *Davis,* 438 N.W.2d at 14; *Ellwood,* 404 N.W.2d at 179; *Ackerman,* 242 N.W.2d at 345. Even an amendment that substantially changes the issues may still be allowed if the opposing party is not prejudiced or unfairly surprised. *See McElroy,* 637 N.W.2d at 495; *Chao v. City of Waterloo,* 346 N.W.2d 822, 825–26 (Iowa 1984).

In determining whether the district court abused its discretion in permitting the defendants to amend their answers to assert the defense of citizen's arrest, it is important to first consider the nature of Rife's false imprisonment claim. In his petition, Rife identified his action as false imprisonment. Later, in a motion in limine, Rife acknowledged his claim was false imprisonment by false arrest.

 We recognize a tort action for false imprisonment, as well as false arrest. *See Nelson v. Winnebago Indus., Inc.,* 619 N.W.2d 385, 388 (Iowa 2000) (elements of false *imprisonment* are detention or restraint against person's will and unlawful detention); *Kraft,* 359 N.W.2d at 469 (elements of false *arrest* are detention or restraint against person's will and unlawfulness of detention). The elements of the torts, however, are indistinguishable. *Kraft,* 359 N.W.2d at 469; *Children v. Burton,* 331 N.W.2d 673, 678 (Iowa 1983); *Fox v. McCurnin,* 205 Iowa 752, 757, 218 N.W. 499, 501 (1928); 1 Dan B. Dobbs, *The Law of Torts* § 36, at 67 (2001) [hereinafter Dobbs]. Generally, false arrest is one of several means of committing false imprisonment. *Children,* 331 N.W.2d at

678. The term false arrest actually "describes the setting for false imprisonment when it is committed by a[ ] [peace] officer or by one who claims the power to make an arrest." 1 Dobbs, § 36, at 67. Thus, a tort action for false imprisonment based on false arrest against one who is not a peace officer normally implies that the detention or restraint to support the tort was done by one who claims the power of arrest.

When a person acts under a claim of authority to arrest, with or without a warrant, the arrest normally involves conduct which, unless privileged, constitutes false imprisonment. Restatement (Second) of Torts § 118 cmt. b (1965); 1 Dobbs, § 36, at 67–68. Thus, a claim of false arrest by a citizen usually turns on whether the conditions authorizing an arrest have been satisfied. *See* 1 Dobbs, § 36, at 67–68. Moreover, the existence of a privilege or legal authority to arrest is an affirmative defense that the defendant must establish. *Children,* 331 N.W.2d at 679 (once plaintiff establishes a warrantless arrest, burden shifts to defendant to prove justification for the arrest); *Fox,* 205 Iowa at 759, 218 N.W. at 501; 1 Dobbs, § 36, at 67–68. The privilege to arrest extends to private persons under the limited circumstances set forth in Iowa Code section 804.9 (1997). *See* 1 Dobbs, § 83, at 195 (private persons privileged to arrest under limited circumstances). If the person perfecting the arrest satisfies the conditions, the defense is met and there can be no recovery for false arrest. *See* Iowa Code § 804.9.

This backdrop reveals that the defense of citizen's arrest raised by a defendant who is not a peace officer is normally an issue in an action for false arrest. *See Kraft,* 359 N.W.2d at 469; *Fox,* 205 Iowa at 759, 218 N.W. at 501. This case is no exception. Once Rife framed his false imprisonment claim as false arrest, the fighting issue in the case turned on the justification for the arrest. This entitled the defendants to assert the privilege to arrest under section 804.9. Additionally, Rife was notified of this defense in a pretrial deposition. The record reveals Habick justified his actions in detaining Rife as a citizen's arrest in his deposition taken prior to trial.

As an affirmative defense, the defendants in this case were required to raise the defense of citizen's arrest in their pleadings. Our rules recognize affirmative defenses must be raised in pleadings. *City of Clinton v. Loeffelholz,* 448 N.W.2d 308, 310 (Iowa 1989); *Foods, Inc. v. Leffler,* 240 N.W.2d 914, 920 (Iowa 1976); *see* Iowa R. Civ. P. 86 (any defense alleging justification or excuse must be specifically pled); Iowa R. Civ. P. 88(a) (must raise defenses in pleadings).

Under the circumstances, the district court did not abuse its discretion in granting the motion to amend. It was necessary for the defendants to properly raise and preserve the issue, and the amendment did not create surprise or inject new issues into the case. *See McElroy,* 637 N.W.2d at 495; *Ackerman,* 242 N.W.2d at 345. In fact, the facts giving rise to the citizen's arrest defense were nearly identical to those necessary for Rife to establish false arrest. *Davis,* 438 N.W.2d at 15 (discussing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222, 226 (1962)). The defendants were simply clarifying their theory of defense by filing the amended answer. *See McElroy,* 637 N.W.2d at 495; *Chao,* 346 N.W.2d at 826. Furthermore, Rife did not request a continuance of trial. The failure to request a continuance mitigates a party's claim that an amendment deprives the party of the ability to adequately prepare for trial. *Ackerman,* 242 N.W.2d at 345.

## V. Citizen's Arrest Defense.

The right of a private person to arrest another, commonly referred to as the right of "citizen's arrest," originated at common law. 5 Am.Jur.2d *Arrest* § 56, at 708 (1995). However, our legislature expressly conferred this right on our citizens in 1851. *See* Iowa Code § 2846 (1851). Today, Iowa Code section 804.9 governs the arrest of persons by private individuals. It creates two categories of citizen's arrest: public offenses and felonies. *See id.* § 804.9 (1997). A citizen may make an arrest for any public offense if the offense is "committed or attempted in the [citizen's] presence." *Id.* § 804.9(1). However, if the public offense is a felony, a less stringent standard is imposed. If the offense constitutes a felony, the citizen must only possess reasonable grounds to believe the person to be arrested committed the felony. *Id.* § 804.9(2).

 There is an additional requirement to perfect a citizen's arrest. The citizen making the arrest must inform the person to be arrested of the intent to arrest and the reasons for the arrest. *Id.* § 804.14 (manner of making an arrest). No formal announcement is required, as long as the citizen sufficiently conveys, either through words or conduct, the intent to perform a citizen's arrest. *See State v. Rains*, 574 N.W.2d 904, 910 (Iowa 1998); *State v. Dennison*, 571 N.W.2d 492, 495 (Iowa 1997); *State v. Lawler*, 571 N.W.2d 486, 490 (Iowa 1997); 6A C.J.S. *Arrest* § 43, at 100 (1975); Restatement (Second) of Torts § 128 cmt. a.; Rollin M. Perkins, *The Law of Arrest*, 25 Iowa L.Rev. 201, 249 (1940) [hereinafter Perkins]. However, noncompliance with the notification requirements is excused if the person to be arrested is actually committing the offense or is escaping so that the citizen does not have the time or opportunity to announce the arrest. Iowa Code

§ 804.14. Thus, no announcement is required if it would not be feasible under the circumstances. Perkins, 25 Iowa L.Rev. at 250.

An arrest is defined as taking a person into custody. Iowa Code § 804.5. It includes "restraint of [a] person or [a] person's submission to custody." *Id.* Rife claims Wharff perfected the arrest and was required to have witnessed a predicate public offense committed by Rife. He further claims Wharff was required to notify Rife of his intent to make an arrest and the reasons for the arrest. Rife asserts there was insufficient evidence for the jury to find the necessary elements of lawful arrest, and he was therefore entitled to judgment as a matter of law.

 Historically, the requirement that a public offense be committed "in the person's presence" has been liberally construed. *People v. Lee*, 204 Cal.Rptr. 667, 669 (Cal.App. Dep't Super.Ct. 1984); *State v. Bergeron*, 326 N.W.2d 684, 686 (N.D. 1982). Yet, as with police officers making warrantless arrests, mere knowledge of the commission of a misdemeanor offense is insufficient to support a citizen's arrest. *State v. Duren*, 266 Minn. 335, 123 N.W.2d 624, 631 (1963). Instead, the citizen must have observed conduct by the alleged offender that is sufficiently indicative of a crime in the course of its commission. 5 Am.Jur.2d *Arrest* § 57, at 708. It is sufficient if the citizen detected the commission of the offense through one of his or her senses, such as hearing, sight, or smell. *State v. Moore*, 129 Idaho 776, 932 P.2d 899, 902–03 (Ct.App.1996); *Gray v. Earls*, 298 Mo. 116, 250 S.W. 567, 572 (1923); *Bergeron*, 326 N.W.2d at 686; 6A C.J.S. *Arrest* § 15, at 25–26 & n. 15.

We agree the record fails to reveal whether Wharff witnessed any public offense, although it does reveal evidence to support a finding that Rife committed one

or more public offenses. The record further reveals Wharff was working as an employee of Papa's Planet on August 13, 1998, and worked in the area where the incident occurred. The record also shows Wharff joined in the chase of Rife along with several other employees and security personnel employed by Papa's Planet immediately after Rife began to run from the nightclub. More importantly, the employees and security officers were acting together. Rife acknowledged the employees and security officers acted in concert.

■■■ The circumstances that permit peace officers to make an arrest without a warrant include the commission of a public offense in the presence of the peace officer. Iowa Code § 804.7(1). Thus, one of the grounds authorizing a peace officer to make a warrantless arrest mirrors one of the grounds authorizing a private person to make an arrest. *Compare id., with id.* § 804.9(1). We additionally recognize that the knowledge of one peace officer, acting in concert with other peace officers, is presumed to be shared by all. *State v. Satern,* 516 N.W.2d 839, 841 (Iowa 1994); *State v. Owens,* 418 N.W.2d 340, 342 (Iowa 1988); *State v. Thornton,* 300 N.W.2d 94, 97 (Iowa 1981); *accord People v. Thompson,* 793 P.2d 1173, 1175 (Colo.1990); *Voorhees v. State,* 699 So.2d 602, 609 (Fla. 1997). This shared-knowledge doctrine permits one officer to make an arrest without knowledge of all of the predicate elements to support an arrest as long as other officers involved have the predicate knowledge. *See Torrey v. City of Tukwila,* 76 Wash.App. 32, 882 P.2d 799, 803–04 (1994) (officers acting together, misdemeanor in the presence of one, arrest by the other, no tort); *accord Jackson v. State,* 274 Ark. 317, 624 S.W.2d 437, 439 (1981); *Thompson,* 793 P.2d at 1175; *People v. Baca,* 198 Colo. 399, 600 P.2d 770, 771–72 (1979); *Voorhees,* 699 So.2d at 609–

10; *Thornton,* 300 N.W.2d at 97. Considering the identical authority of citizens and peace officers to make warrantless arrests, we believe the rule of shared knowledge applicable to police officers acting together should also apply to citizens acting together.

■■■ Applying the rule of shared knowledge to the citizen's arrest in this case, we find the record demonstrates sufficient evidence was introduced to satisfy the presence requirement. The employees were acting within the scope of their employment and, consequently, were acting in concert in detaining Rife. Several of Wharff's co-employees testified at trial to public offenses committed by Rife in their presence. Under the circumstances, it was not necessary for Wharff to also testify to the same evidence.

Rife also claims there was insufficient evidence that the defendants complied with the disclosure requirement of the arrest statute. He claims this too rendered the arrest unlawful.

■■■ Although none of the employees or security officers involved in the citizen's arrest informed Rife of their intent to arrest, we find there was sufficient evidence to justify noncompliance with the disclosure requirement under section 804.14 based on the circumstances surrounding the arrest. The disclosure requirement under section 804.14 appears to be designed to minimize the amount of force required to accomplish the arrest. *See* 1 Dobbs, § 83, at 194. Without the disclosure, the plaintiff might perceive the arrest as an attack or some other misuse of power. *Id.* at 195. On the other hand, section 804.14 recognizes the futility of disclosure when "the person to be arrested is actually engaged in the commission of or attempt to commit an offense, or escapes, so that there is no time or opportunity to do so...." Iowa Code § 804.14.

There was substantial evidence to show the employees were excused from the notification requirement when they attempted to restrain Rife on Papa's Planet's premises because Rife was "actually engaged in the commission of ... an offense" at the time. *Id.* Furthermore, there was substantial evidence to excuse the disclosure after Rife broke loose and ran from the premises. *See id.* In both instances, the situations escalated within short time periods. There was no time or opportunity for the employees to announce their intentions. *See id.* Additionally, the rationale for requiring the disclosure no longer existed after Rife ran from the scene. As explained in the Restatement (Second) of Torts:

> If the person arrested knows of the cause of [the] arrest, the manifestation would be a mere superfluous and idle ceremony, and is therefore not required. If an officer attempts to arrest or arrests another engaged in the commission of an offense or on fresh pursuit, the officer is not required to manifest the cause of the arrest. In such case it is extremely unlikely that the person arrested is unaware of the fact that he is committing the offense, but his ignorance is immaterial unless the actor realizes or should realize that the other is not aware that his conduct constitutes an offense.

Restatement (Second) of Torts § 128 cmt. f. The circumstances support a finding that Rife was aware his conduct constituted a public offense and the defendants sought to detain him for that purpose. *See* 1 Dobbs, § 83, at 195 (disclosure not required where person to be arrested already aware of the reason for the arrest).

Finally, when Wharff caught up with Rife, Wharff requested Rife's cooperation before ultimately restraining him. After handcuffing Rife, Habick informed Rife the police department had been summoned. Upon the officers' arrival, Rife was promptly released to their control. Thus, the procedural requirements of section 804.24, requiring a private citizen to deliver an arrested person to a police officer or magistrate without unnecessary delay, were also satisfied.

## VI. Conclusion.

The district court acted within its discretion in granting the defendants' motions to amend their answers. Additionally, the district court did not err in denying the motion for directed verdict and motion for judgment notwithstanding the verdict.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except TERNUS and STREIT, JJ., who take no part.