**IN THE COURT OF APPEALS OF IOWA**

No. 13-1941
Filed February 11, 2015

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**CARLOS DANILO OCAMPO MEDRANO,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Buena Vista County, Patrick M. Carr, Judge.

The defendant appeals from the district court's denial of his motion to suppress, challenging the district court's finding of reasonable suspicion. **REVERSED AND REMANDED.**

Mark C. Smith, State Appellate Defender, Patricia A. Reynolds, Assistant Appellate Defender, and Angela O'Kane, Student Legal Intern, for appellant.

Thomas J. Miller, Attorney General, Benjamin Parrott, Assistant Attorney General, David Patton, County Attorney, and Julian West and Paul Allen, Assistant County Attorneys, for appellee.

Heard by Danilson, C.J., and Tabor and Bower, JJ.

**DANILSON, C.J.**

Carlos Ocampo Medrano appeals the district court's denial of his motion to suppress regarding evidence obtained after the traffic stop. Ocampo Medrano maintains that the officer did not have reasonable suspicion to stop his vehicle. Reviewing the totality of the circumstances, we find the officer did not have authority to stop Ocampo Medrano's vehicle. The officer lacked a reasonable suspicion he had the correct vehicle, and the alleged traffic violations reported by a citizen complainant occurred two days earlier. Moreover, without a warrant and without probable cause, the officer did not have authority to stop Ocampo Medrano's vehicle for a completed simple misdemeanor not observed by the officer. Thus, we reverse the district court's denial of the motion to suppress, and we remand for further proceedings consistent with this opinion.

**I. Background Facts and Proceedings.**

On October 22, 2012, Ocampo Medrano was charged with two counts of forgery for acts occurring on or about October 11, 2012.

Ocampo Medrano filed a motion to suppress on January 17, 2013. He filed an amended motion to suppress on February 15, 2013. In the motion, Medrano Ocampo maintained that Officer Abbas did not have probable cause to stop his vehicle and requested the suppression of all evidence obtained from the illegal stop.[1]

---

[1] Ocampo Medrano's motion to suppress also maintained that he had been interrogated without the benefit of *Miranda* warnings and requested the suppression of all statements and admissions made during the illegal interrogation. The district court granted this portion of the motion—suppressing Ocampo Medrano's confession—and it is not the subject of this appeal.

On February 18, 2013, a hearing was held on the motion to suppress. At the hearing, Officer Abbas testified she had received a complaint from a named citizen on October 9, 2012. The citizen told Officer Abbas that he was driving on 450th Street, a gravel road near his home, when he witnessed a silver Grand Prix run the stop sign and nearly cause a collision. The citizen told Officer Abbas that he followed the car and actually encountered the occupants. The vehicle was occupied by three males. He also reported the car was covered in dust and had out-of-county license plates. The citizen also stated he had seen the vehicle several times in the past driving in a reckless manner running the stop sign.[2]

On October 11, 2012, Officer Abbas was patrolling near 450th Street when she saw a dusty, silver Grand Prix with out-of-county license plates and three occupants. According to Officer Abbas, she did not observe Ocampo Medrano commit any traffic violations, but she initiated a traffic stop in order to "ID the driver and ask him about the complaints that [she] had received previously." Later, Ocampo Medrano confessed he was in the country illegally and did not have a valid driver's license.

On April 17, 2013, the district court filed a written ruling on the motion to suppress. The district court concluded, "Deputy Abbas had 'reasonable suspicion' to initiate a traffic stop of the Defendant's vehicle. Although the Defendant claims otherwise, Deputy Abbas did not need 'probable cause.' Stopping the motor vehicle and questioning the driver about whether he had a valid driver's license amounts to a *Terry v. Ohio* stop." The court found the stop

---

[2] The minutes of testimony report that three weeks earlier, another named citizen reported a complaint of a vehicle driving in a reckless manner on the same gravel road.

was not illegal and denied Ocampo Medrano's motion to suppress all evidence obtained from the stop. Ocampo Medrano appeals.

**II. Standard of Review.**

Ocampo Medrano asserts his state and federal constitutional rights to be free from unreasonable search and seizure were violated.[3] We review constitutional claims de novo. *State v. Tyler*, 830 N.W.2d 288, 291 (Iowa 2013). "A de novo review constitutes an independent evaluation of the totality of the circumstances as shown by the entire record." *Id.* We give deference to the factual findings of the district court because of its opportunity to evaluate the credibility of witnesses, but we are not bound by the findings. *Id.* In conducting our review, we consider evidence presented at the suppression hearing as well as evidence presented at trial. *State v. Kinkead*, 570 N.W.2d 97, 99 (Iowa 1997).

**III. Discussion.**

The Fourth Amendment of the United States Constitution and article 1, section 8 of the Iowa Constitution prohibit "unreasonable search and seizures." "[S]topping an automobile and detaining its occupants constitute a 'seizure' . . . even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Stopping a vehicle and detaining the occupant is not an unreasonable seizure when the officer has either (1) probable cause due to observation of a traffic violation or (2) reasonable

---

[3] Because Ocampo Medrano "has not proposed a standard for interpreting our search and seizure provisions under the Iowa Constitution differently from its federal constitution counterpart, we will apply the general standards as outlined by the United States Supreme Court for addressing a search and seizure challenge under the Iowa Constitution." *Tyler*, 830 N.W.2d at 292.

suspicion, supported by articulable facts that a criminal act has occurred or is occurring.  *State v. Tague*, 676 N.W.2d 197, 201–04 (Iowa 2004).

The State concedes Officer Abbas did not observe Ocampo Medrano commit any violations, did not have probable cause to stop Ocampo Medrano, and did not have a reasonable suspicion that Ocampo Medrano had committed an indictable offense.  The State also concedes that error was preserved by Ocampo Medrano's motion to suppress although it did not specifically reference reasonable suspicion.  Thus, the question at hand is whether the officer had a reasonable suspicion to support stopping Ocampo Medrano.

"[R]easonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence."  *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).  However, the State has the burden "to show by a preponderance of the evidence that the stopping officer had specific and articulable facts, which taken together with rational inferences from those facts, to reasonably believe criminal activity may have occurred."  *Tague*, 676 N.W.2d at 204.  "Whether reasonable suspicion exists for an investigatory stop must be determined in light of the totality of the circumstances confronting the officer, including all information available to the officer at the time the officer makes the decision to stop the vehicle.  *Id.*

Here, a named citizen reported he witnessed a silver Grand Prix run a stop sign and almost cause a collision.  Iowa has adopted the position that information imparted by a citizen informant is generally reliable.  *State v. Niehaus*, 452 N.W.2d 184, 189 (Iowa 1990).  "The statement is merely a presumption, however, and not a per se rule."  *Id.*  "Implicit in this construction is

the idea that, even where a citizen informant is involved, a common-sense analysis of the totality of the circumstances must be applied to assess the reliability of the information." *Id.* Even with the presumption the citizen informant's complaint was true, we find Officer Abbas did not have reasonable suspicion to support stopping Ocampo Medrano. Officer Abbas testified she believed Ocampo Medrano's vehicle was the subject of the complaint because both were dusty, silver Grand Prix with out-of-town license plates and had three occupants. She added that both were seen in the same area. However, over two days passed between the time of the citizen complaint and Officer Abbas initiating the traffic stop. After that amount of time, the information from the citizen informant regarding the area the car was in, the number of passengers in the car, and the amount of dust on the car were no longer reliable identifying factors as each could have easily changed, and presumably did, during the two-day delay.[4] Further, before stopping the vehicle, there was no evidence the officer knew any identifying information of the operator. Thus, if we find Officer Abbas had a reasonable suspicion to stop Ocampo Medrano's vehicle, we would have to find she had a reasonable suspicion to stop any dusty silver Grand Prix

---

[4] The State relies on the supreme court's holding in *State v. Vance*, 790 N.W.2d 775, 781–83 (Iowa 2010), for the proposition that if the tip established reasonable suspicion to support stopping the car described in the complaint, the officer could infer the driver was the same person both times. However, *Vance* holds:

> [A]n officer has reasonable suspicion to initiate an investigatory stop of a vehicle to investigate whether the driver has a valid driver's license when the officer knows the registered owner of the vehicle has a suspended license, and the officer is unaware of any evidence or circumstances indicating the registered owner is not the driver of the vehicle.

Here, there is no indication Officer Abbas knew who the registered owner of the vehicle was or that there was any information about the registered owner which would justify stopping the vehicle.

with out-of-county plates. We cannot do so. At best, Officer Abbas had a mere suspicion.

Because we find the officer did not have reasonable suspicion that the vehicle stopped was the same vehicle that was the subject of a citizen complaint given two days earlier, we need not address the larger constitutional issue of whether reasonable suspicion of a completed misdemeanor can ever support a stop under the Fourth Amendment. But in the event we are in error, we choose to address the issue.

The State asks us to decide the broader question of whether a reasonable suspicion of a completed misdemeanor can ever support a stop under the Fourth Amendment in order to dispose of this case. Federal courts are divided on the issue. *State v. Pals*, 805 N.W.2d 767, 775 (Iowa 2011); *compare Gaddis ex rel. Gaddis v. Redford Twp.,* 364 F.3d 763, 771 n.6 (6th Cir. 2004) (holding police may not make a stop with only reasonable suspicion of a "mere completed misdemeanor") *with United States v. Hughes*, 517 F.3d 1013, 1017–18 (8th Cir. 2008) (applying a balancing test), *and United States v. Grigg*, 498 F.3d 1070, 1081 (9th Cir. 2007) (same). And the Iowa Supreme Court has not yet decided the issue. *See Pals*, 805 N.W.2d at 775 (distinguishing an ongoing civil infraction from a completed misdemeanor); *see also Tyler*, 830 N.W.2d at 298 (finding the officer did not have reasonable suspicion at the time of the stop and declining to resolve whether the reasonable suspicion could have supported the stop for a completed misdemeanor).

If given the opportunity to address the issue, we do not believe our supreme court will find that reasonable suspicion of a completed misdemeanor

not observed by the officer is sufficient to effectuate a traffic stop amounting to a seizure. In such circumstances, the officer would not be able to arrest or issue a citation in lieu of arrest for the completed simple misdemeanor without probable cause that the person to be arrested committed the offense. *See* Iowa Code § 804.7(2) (an officer may make an arrest without a warrant "[w]here a public offense has in fact been committed and the peace officer has reasonable ground for believing that the person to be arrested has committed it"); Iowa Code § 805.1(1) (a citation in lieu of arrest may be issued by "a peace officer having grounds to make an arrest"). "Reasonable grounds" is synonymous with probable cause. *State v. Freeman*, 705 N.W.2d 293, 298 (Iowa 2005).[5]

---

[5] Our supreme court has noted the distinction between the authority to arrest for a felony and the authority to arrest for a simple misdemeanor has existed since common law. *Young v. Des Moines,* 262 N.W.2d 612, 616–20 (Iowa 1978) *overruled on other grounds by Parks v. City of Marshalltown,* 440 N.W.2d 377, 379 (Iowa 2000). "At common law a peace officer could make a warrantless arrest if he had reasonable suspicion a felony had been or was being committed by the person to be arrested. An officer's authority to make warrantless misdemeanor arrests was limited, however, to offenses involving breach of the peace committed in his presence." *Id.* at 616. In *Young,* the court concluded that if a public offense was being committed in the officer's presence as determined by his sensory perceptions *and* he had probable cause, the officer may immediately apprehend the offender pursuant to Iowa Code section 755.4(1), the predecessor statute to section 804.7(1). *Id.* at 616–20.

The distinction between arrests for simple misdemeanors and arrests for felonies remains embodied in section 804.7, but the legislature has now categorized the offenses by distinguishing between "public offenses" and "indictable offenses." *See* Iowa Code § 804.7(1)-(3).

In *Rife v. D.T. Corner, Inc.,* 641 N.W.2d 761, 764 (Iowa 2002), our supreme court recognized that the legislature had created "categories" of arrest distinguishing between public offenses and more serious offenses. *Id.* at 769. The court explained, "A citizen may make an arrest for any public offense if the offense is 'committed or attempted in the [citizen's] presence.'" *Id.* (citing Iowa Code § 804.9(1)). However, if the public offense is a felony, "a less stringent standard is imposed." *Rife,* 641 N.W.2d at 769. If the offense constitutes a felony and the felony has been committed, "the citizen must only possess reasonable grounds to believe the person to be arrested committed the felony." *Id.; see also* Iowa Code § 804.9(2). The court also observed that citizens, like police officers, may not make a warrantless arrest based upon "mere knowledge of the commission of a misdemeanor offense" but rather must have detected the commission of the offense through one or more of their senses. *Rife,* 641 N .W.2d at 769.

Further,

> [E]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.

*Prouse*, 440 U.S. at 663. Because Officer Abbas did not have a warrant and lacked probable cause, there was no purpose or basis for the stop unless the officer believed there presently was criminal activity afoot. Here, Officer Abbas solely relied upon the previous complaint and did not observe or suspect a current violation of the law.

Without reasonable suspicion to support the stop, all evidence obtained during the stop is inadmissible. *See Tyler*, 830 N.W.2d at 298. Even if reasonable suspicion existed, without a warrant and without probable cause, there was no basis to stop Ocampo Medrano's vehicle for a completed simple misdemeanor not observed by the officer. Thus, we reverse the district court's denial of Ocampo Medrano's motion to suppress, and we remand the case for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**