John Richard KRAFT and Scott Raymond Ellis, Appellees,

v.

CITY OF BETTENDORF, Appellant.

No. 83–1403.

Supreme Court of Iowa.

Dec. 19, 1984.

John D. Stonebraker and Elliott R. McDonald III of McDonald, Stonebraker & Cepican, P.C., Davenport, for appellant.

David A. Millage, Bettendorf, for appellees.

Considered by HARRIS, P.J., and McGIVERIN, LARSON, SCHULTZ and WOLLE, JJ.

McGIVERIN, Justice.

Defendant City of Bettendorf appeals from judgment entered on a jury verdict awarding plaintiffs John Richard Kraft and Scott Raymond Ellis $15,000 and $8,000, respectively, as damages for their false arrest by two Bettendorf police officers following an altercation in a tavern. Plaintiffs cross-appeal the trial court's entry of a directed verdict for defendant with respect to plaintiffs' claims under 42 U.S.C. section 1983. We affirm.

On appeal, defendant contends: (1) that the trial court erred in refusing to grant a directed verdict with respect to plaintiffs' claims for false arrest; and (2) the trial court erred in allowing the jury to award damages for plaintiffs' mental distress.

On cross-appeal, plaintiffs maintain that the trial court misinterpreted federal law in granting defendant a directed verdict on plaintiffs' section 1983 claims.

The facts of this case were sharply disputed at trial. Because defendant seeks a new trial, and was the moving party with respect to both the motions for directed verdict, we view the evidence in the light most favorable to plaintiffs. *Children v. Burton*, 331 N.W.2d 673, 681 (Iowa), *cert. denied*, —— U.S. ——, 104 S.Ct. 155, 78 L.Ed.2d 143 (1983).

At approximately 9:00 p.m. on the evening of January 29, 1982, John Kraft and his wife Shawn, and Scott Ellis (Shawn's brother) and his fiancee Elizabeth Hippler were talking to friends and playing pool at O'Meara's Pub in Bettendorf. At approximately 10:00 p.m. Daniel Williams, an off-duty Bettendorf police officer in plain clothes, entered the bar with some friends of his, including Paula May whom he was dating at that time. Paula May was then separated from her husband Jody May, who was a good friend of Scott Ellis and Elizabeth Hippler. Paula was the sister of Bettendorf police officer Warren Beine. Scott Ellis testified that on previous occasions Beine and Williams had each acted threateningly toward him. He stated that he believed the reason for their behavior was his friendship with Jody May.

Mr. and Mrs. Kraft, Scott Ellis, and Elizabeth Hippler each testified that upon entering the bar and seeing them, Williams began laughing, pointing his finger, and staring at them from across the room. Several times during the next hour and a half, Williams walked past or up to the table at which they were sitting and either stared at Ellis or directed obscene insults at all four of them.

Scott Ellis testified that after making five or six passes by their table, Williams came up to him and began shaking his fist in Ellis' face and repeating an obscene insult. Ellis said that he tried to back off and turn away from Williams, but Williams grabbed his arm and turned him so that they were face to face. Ellis testified that

he then hit Williams in the face, because he thought Williams was about to hit him. Elizabeth Hippler also testified that she believed Williams was about to hit Ellis.

Ellis and Williams fell to the floor and scuffled briefly before being separated by other patrons of the bar. Kraft testified that he pulled Williams away from Ellis as other persons were pulling Ellis away.

Elizabeth Hippler had called the police, and within a few minutes several Bettendorf police officers arrived, including Bruce Schwarz, David Schaefer, Warren Beine (Paula May's brother), and Denny Benes, the shift commander. According to plaintiffs, Mrs. Kraft, and Elizabeth Hippler, officers Schwarz and Beine spoke with Williams for about thirty seconds and then arrested plaintiffs for assault. Schaefer testified that he smelled alcohol on Williams' breath, and another officer testified that he could tell Williams had been drinking. The officers did not ask any questions of anyone else in the bar before making the arrests.

Plaintiffs were subsequently tried for assault and acquitted.

Plaintiff Kraft sued the City of Bettendorf and David Schaefer, the officer who took him to the Bettendorf police station. In Count I of his petition he alleged false arrest and in Count II he alleged, pursuant to 42 U.S.C. section 1983, that the acts of the defendants constituted a deprivation of rights guaranteed him by the United States Constitution. Plaintiff Ellis sued the City and Warren Beine, the officer who arrested him. His petition was substantially identical to Kraft's. The two actions were tried together. The trial court dismissed all claims against Schaefer and Beine individually, making the City of Bettendorf the sole defendant. No error is now claimed in that regard. The case was submitted to the jury under Count I of the petitions. The jury was instructed as to Count I that the acts of the two police officers should be considered as the acts of the City. *See* Iowa Code §§ 613A.2 and .8.

The jury returned verdicts for Kraft and Ellis in the respective amounts of $15,000 and $8,000. Defendant City of Bettendorf appeals.

I. *The existence of probable cause for plaintiffs' arrests.* At the close of plaintiffs' evidence, defendant moved for a directed verdict with respect to Count I of the petitions, which alleged the false arrest of plaintiffs. Defendant maintained that as a matter of law probable cause existed for the arrest of each plaintiff and, therefore, no recovery for false arrest was permissible. The motion was denied. At the close of all the evidence, the motion was renewed and again denied. These denials constitute defendant's first assignment of error.

As noted above, for the purposes of reviewing a ruling on a motion for directed verdict we view the evidence in the light most favorable to the nonmoving party. We therefore assume that in arresting plaintiffs, officers Schwarz and Beine relied solely on Williams' statements to them at the scene of the fight as giving them probable cause to arrest.

The essential elements of a claim for false arrest are: (1) detention or restraint against one's will, and (2) unlawfulness of the detention or restraint. *Children v. Burton,* 331 N.W.2d 673, 678–79 (Iowa), *cert. denied,* —— U.S. ——, 104 S.Ct. 155, 78 L.Ed.2d 143 (1983). False arrest is indistinguishable from false imprisonment. *Id.*

A peace officer may make a warrantless arrest if he or she "has reasonable ground for believing that an indictable public offense has been committed and has reasonable ground for believing that the person to be arrested has committed it." Iowa Code section 804.7(3) (1983). The issue presented thus becomes whether the arresting officers had reasonable ground for believing that Kraft and Ellis had committed the offense of assault.[1] The expression "reasonable ground" is equivalent to traditional "probable cause." *Children,* 331 N.W.2d at 679.

The standard of probable cause for the purpose of civil actions for false arrest was discussed extensively in *Children.* There we said that, to justify a warrantless arrest for a crime not committed in his presence, a police officer must allege and prove (1) that he in good faith believed that the person arrested had committed the crime, and (2) that his belief was reasonable. 331 N.W.2d at 680. In considering these two matters, courts look to the facts within the officer's knowledge at the time the arrest was made. *Id.*

In support of its contention that probable cause existed as a matter of law for plaintiffs' arrest, defendant City cites *Children.* In that case, police had for several weeks been receiving reports of indecent exposures in Charles City and Mason City stores. A woman who had reported one of the incidents, which occurred at the store where she was working, later called the police to report that the man who had exposed himself was again in the store. He was arrested on the strength of her identification. The charges were subsequently dismissed and another man was ultimately convicted of the exposures. The arrestee sued for false arrest and won a jury verdict. On appeal, we held that probable cause for his arrest had existed as a matter of law, and that a directed verdict should have been granted to the defendant police officers and city in the case.

Defendant City of Bettendorf contends that this case is similar to *Children* in that the arresting officers relied on information supplied by a witness (Williams) to make the arrests of plaintiffs. Although the case is similar in this broad aspect, we find that on closer examination *Children* is factually distinguishable.

In *Children,* the witness whose statements led to the arrest had no previous

---

1. Assault is an indictable public offense if it is committed without intent to inflict serious injury and causes bodily injury. *See* Iowa Code sections 708.2(2), 903.1(2), and Iowa R.Crim.P. 4(2).

acquaintance with the arrestee. There was no indication that she bore him any particular ill will, except in connection with the indecent exposure she had witnessed and which she believed he committed. She had not been drinking at the time of the exposure or at the time she made the identification leading to the arrest. She had no possible incentive to cause the arrest of the arrestee as a means of preventing her own arrest. Having no reason to question her veracity, the officer in *Children* relied on her statements to make the arrest. We held that under those circumstances his belief that the arrestee had committed a crime, formed in reliance on the statements of the witness, was reasonable as a matter of law and probable cause for the arrest therefore existed.

■ Probable cause, however, must be determined on the particular facts of each case. *Children*, 331 N.W.2d at 680. If pertinent facts relating to the existence of probable cause are in dispute, the existence of probable cause is a jury question. *Id.* at 681. We believe that when a police officer makes a warrantless arrest, for a crime not committed in his presence, on the strength of a single witness' uncorroborated statements and there exist circumstances known to the officer which could cause a reasonable person to doubt the veracity or reliability of the statements, then the credibility of the statements is a pertinent fact relating to the existence of probable cause. It is for the jury to determine whether the witness' uncorroborated accusation would lead to a reasonable belief that the person accused committed a crime and thus afford probable cause for arrest.

In this case, the evidence showed that Williams, because of his relationship with Paula May, bore a longstanding animosity toward Scott Ellis, and that this was known to the arresting officers (one of whom was May's brother). At the time of the fight, Williams had been drinking to an unknown extent, and this too was known to the officers. Moreover, it is a fair inference he may have desired the arrest of plaintiffs in order to prevent his own arrest at their instigation.

■ Under these circumstances, we are unwilling to hold that as a matter of law Williams' statements afforded probable cause for the arrest of plaintiffs. To do so would be to rule, in effect, that the uncorroborated accusation of a single witness invariably establishes probable cause for a warrantless arrest, notwithstanding any fact known to the police that might reflect adversely upon the credibility of the witness. This is not the holding of *Children*, in which the arresting officer had no reason to doubt the veracity of the witness he relied upon. We conclude that the trial court did not err in denying the motion for directed verdict and allowing the jury to decide whether, under the circumstances, probable cause existed for the arrest of plaintiffs.

II. *Damages for humiliation, mental pain, and anguish.* Although plaintiffs produced evidence of their mental distress caused by the arrests, there were no physical manifestations of such distress.

Defendant next contends that the trial court erred in instructing the jury that, if it found that plaintiffs had been falsely arrested, it could award damages not only for their loss of employment caused by the arrest, but also for their resulting humiliation, mental pain, and anguish. Defendant says that because plaintiffs offered no evidence of any physical manifestation of mental distress, damages for mental distress resulting from false arrest could not be awarded. We do not agree.

We have stated that an essential part of the injury done by a false arrest is the mental anguish it causes the victim.

> While loss of time and expense are usual incidents to claims [of false arrest], the principal ground of recovery in most cases of this kind is the shame and humiliation to which the injured party has been wrongfully subjected.

*Young v. Gormley*, 120 Iowa 372, 375, 94 N.W. 922, 923 (1903). *See also Dedman v. McKinley*, 238 Iowa 886, 892, 29 N.W.2d

337, 340 (1947) (damage award for humiliation caused by false arrest upheld although plaintiff alleged no physical or economic injury).

■ We have never conditioned recovery of damages for mental suffering caused by false arrest on proof of physical manifestations of such mental suffering. We decline to do so here. The trial court did not err in allowing the jury to award damages for plaintiffs' mental suffering resulting from the false arrests.

III. *Plaintiffs' claims under 42 U.S.C. section 1983.* At the close of plaintiffs' evidence, defendant moved for a directed verdict in its favor with respect to Count II of plaintiffs' petition. Count II was brought under 42 U.S.C. section 1983 and alleged a violation of plaintiffs' constitutional rights by the arresting officers and the City of Bettendorf. The motion for directed verdict was granted, and plaintiffs cross-appeal from this ruling as to the City.

■ Plaintiffs' contention that the ruling was erroneous seems to be based on the proposition that municipalities are not absolutely immune from suit under section 1983. We do not understand this proposition to be disputed. Certainly there are circumstances in which a municipality may be liable under section 1983. However, section 1983 will not support a claim based on respondeat superior. *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509, 521 (1981). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.... [I]t is when execution of a government's policy or custom, *whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy,* inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. New York City Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611, 638 (1978). (Emphasis added.)

■ The record is devoid of any evidence from which a jury could reasonably conclude that the injury inflicted upon plain-tiffs was due to the execution of a policy or custom adopted by the lawmakers of the City, or by those whose edicts or acts may fairly be said to represent the City's official policy. Because plaintiffs failed to present a jury question on this issue, the trial court did not err in directing a verdict for the City with respect to plaintiffs' section 1983 claims. *See Rizzo v. Goode,* 423 U.S. 362, 373–77, 96 S.Ct. 598, 605–07, 46 L.Ed.2d 561, 570–73 (1976) (city officials not liable under § 1983 for misconduct of police officers in absence of any showing that city officials had taken any "affirmative part" in violating plaintiffs' constitutional rights). *Cf. Webster v. City of Houston,* 689 F.2d 1220, 1227 (5th Cir.1982) (evidence was sufficient to allow jury to conclude that plaintiff's decedent was shot as result of police department policy or custom of carrying a gun to be put at the side of an unarmed suspect to justify his shooting by police); *Black v. Stephens,* 662 F.2d 181, 189–91 (3rd Cir.1981) (evidence was sufficient to establish that police officer's use of excessive force was due to policy adopted by police chief).

We have considered all the contentions made by the parties and find them to be without merit. The case is affirmed.

AFFIRMED.