# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3678

_____

| | | |
|---|---|---|
| Maxine Gail Veatch; Chris Price, | * | |
| | * | |
| Appellants, | * | |
| | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Bartels Lutheran Home; Debra K. | * | |
| Schroeder; Brianna Brunner; City of | * | |
| Waverly; Jason Leonard, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: September 20, 2010
Filed: December 28, 2010 (corrected 12/28/10)

_____

Before RILEY, Chief Judge, MELLOY and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Maxine Gail Veatch was arrested and detained by Sergeant Jason Leonard of the City of Waverly, Iowa, Police Department for assaulting her mother, Agnes Bell. The alleged assault occurred at Woodland Terrace, a skilled care residential facility where Bell resided. Veatch and her sister, Chris Price, brought this action under 42 U.S.C. § 1983 and various state-law theories against Leonard, the City, Bartels Lutheran Home, which operates Woodland Terrace, and two Bartels employees. The

district court[1] granted summary judgment in favor of Leonard and the City on the § 1983 claim. The court, declining to exercise supplemental jurisdiction over the state-law claims, dismissed the remainder of the complaint without prejudice. Veatch appeals the district court's grant of summary judgment on the § 1983 claim, and we affirm.

I.

On September 27, 2006, Veatch and Price visited Bell at Woodland Terrace. During this visit, Janice Whiteside, a Bartels nurse, observed Veatch shove Bell into her wheelchair. At the direction of her supervisor, Whiteside submitted a written report of the incident to Brianna Brunner, the Director of Nursing for Bartels. After reviewing the report the following day, Brunner informed Debra Schroeder, the President and Chief Executive Officer of Bartels, and directed two Bartels nurses to examine Bell for possible injuries. The nurses discovered bruising on Bell's knee and forearms. Brunner also contacted the Waverly Police Department, relaying the substance of Whiteside's report to Officer Thomas Luebbers. Based on this conversation, Luebbers prepared a report and described the incident to Leonard, who was sent to investigate further. Leonard reported to Bartels and discussed the incident with Brunner, Schroeder, and two additional staff members, but he did not meet with Bell or Whiteside.

The next day, Leonard contacted Veatch and asked her to come to the Waverly Law Center to discuss the alleged incident. The two met, and Leonard described the allegation to Veatch. During the meeting, Veatch informed Leonard that she would like to have an attorney present. At that point, Leonard left the room to retrieve and complete a complaint form. When he returned, Leonard placed Veatch under arrest

---

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

for assault. Veatch was placed in the Bremer County Jail, where she remained overnight. A magistrate judge later determined that Leonard had probable cause to make the arrest and then released Veatch on her own recognizance. The State of Iowa charged Veatch with simple misdemeanor assault in violation of Iowa Code §§ 708.1 and 708.2(6), and after a trial, a jury returned a verdict of not guilty.

Veatch filed this action against Leonard and the City pursuant to § 1983. As relevant to this appeal, the complaint alleged that Leonard violated Veatch's rights under the Fourth Amendment of the Constitution, and that the City was liable for failing to train Leonard properly. The district court dismissed the § 1983 claim against Leonard because Veatch sued him only in his official capacity, and the allegation was therefore merely a claim against the City. The court also granted the City's motion for summary judgment on the § 1983 claim, holding that Leonard did not commit a constitutional violation. The court reasoned that because Leonard had probable cause to arrest Veatch, he did not violate the Fourth Amendment.

II.

Although it is unclear whether Veatch appeals the district court's ruling on her § 1983 claim against Leonard, the district court properly dismissed the claim. Because the complaint did not specifically name Leonard in his individual capacity, we presume that he was sued only in his official capacity. *See Artis v. Francis Howell N. Band Booster Ass'n*, 161 F.3d 1178, 1182 (8th Cir. 1998). A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity. *See Baker v. Chisom*, 501 F.3d 920, 925 (8th Cir. 2007). Thus, the court properly dismissed the claim against Leonard as redundant of the claim against the City. *See Artis*, 161 F.3d at 1182.

We review the district court's grant of summary judgment in favor of the City *de novo*, viewing the record in the light most favorable to Veatch and drawing all

reasonable inferences in her favor. *Dodd v. James*, 623 F.3d 563, 566 (8th Cir. 2010). Summary judgment is proper if the record presents no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipality can be liable under § 1983 if an "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. To establish municipal liability, a plaintiff must first show that one of the municipality's officers violated her federal right. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007). If that element is satisfied, then a plaintiff must establish the requisite degree of fault on the part of the municipality and a causal link between municipal policy and the alleged violation. *See City of Canton v. Harris*, 489 U.S. 378, 388-92 (1989). Such a showing requires either the existence of a municipal policy that violates federal law on its face or evidence that the municipality has acted with "deliberate indifference" to an individual's federal rights. *See Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404-07 (1997); *City of Canton*, 489 U.S. at 388-89.

We first consider whether Leonard's warrantless arrest of Veatch constituted a violation of federal law, namely, the Fourth Amendment's prohibition of unreasonable seizures. The Fourth Amendment, as applied to the States through the Fourteenth Amendment, requires that an officer have probable cause before making a warrantless arrest. *Stufflebeam v. Harris*, 521 F.3d 884, 886 (8th Cir. 2008). Probable cause exists when a police officer has reasonably trustworthy information that is sufficient to lead a person of reasonable caution to believe that the suspect has committed or is committing a crime. *See Brinegar v. United States*, 338 U.S. 160, 175 (1949); *United States v. Parish*, 606 F.3d 480, 486 (8th Cir. 2010).

In this case, the information that Leonard received during the course of his investigation established probable cause. After Luebbers informed Leonard of the call

received from Bartels, Leonard interviewed four Bartels staff members for one to two hours. During this interview, Bartels staff recounted the incident that Whiteside had witnessed. Jenny Kane, one of the Bartels nurses who examined Bell after the incident, described the bruising she discovered on Bell's body. Bartels staff also provided Leonard with documentation detailing past verbal abuse of Bell by Veatch and Price. Veatch maintains that the information provided by Bartels was unreliable, because it included only second-hand accounts from individuals who had a turbulent history with Veatch. Although Leonard did not speak before the arrest to anyone who witnessed the incident, "probable-cause determinations generally may be based on hearsay." *United States v. Leppert*, 408 F.3d 1039, 1042 (8th Cir. 2005); *see also Draper v. United States*, 358 U.S. 307, 311-12 & n.4 (1959). There is no evidence to suggest that Leonard had reason to doubt the credibility of the four staff members, and Kane's first-hand account of the bruising found on Bell's body corroborated the second-hand information about an alleged assault. The information gathered by Leonard was sufficiently reliable to establish a reasonable ground for belief that Veatch had committed a misdemeanor assault.[2]

The existence of probable cause alone, however, is not sufficient to resolve whether Leonard's arrest was constitutional. Leonard did not witness the alleged assault, and the Supreme Court has not decided whether the Fourth Amendment permits a warrantless arrest for a misdemeanor when the alleged offense did not occur in the presence of the arresting officer. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 340 n.11 (2001). Although the weight of authority holds that the Fourth Amendment does not impose an "in the presence" requirement of this type, s*ee Woods v. City of Chicago*, 234 F.3d 979, 995 (7th Cir. 2000) (collecting cases); *see*

---

[2]Veatch argues that a genuine issue of material fact exists as to whether Leonard knew, prior to the arrest, of a doctor's report describing Bells's bruising as consistent with being pushed into a chair. Because the information provided by Bartels staff during their meeting with Leonard established probable cause, this factual dispute is not material.

*also Welsh v. Wisconsin*, 466 U.S. 740, 756 (1984) (White, J., dissenting), this circuit has not decided the point, *cf. Garske v. United States*, 1 F.2d 620, 622-23 (8th Cir. 1924), and we need not address the issue in this case. Even if Veatch could show a Fourth Amendment violation based on Leonard's execution of an arrest for a misdemeanor committed outside his presence, she has failed to satisfy the "rigorous standards of culpability and causation" that are required for municipal liability under § 1983. *Brown*, 520 U.S. at 405.

Veatch contends that the City has acted with a policy of "deliberate indifference" to constitutional rights by failing to train its officers on the lawfulness of warrantless misdemeanor arrests. Veatch does not allege, and the evidence does not suggest, that the City had a history of unlawful misdemeanor arrests, *see Brown*, 520 U.S. at 407, so any municipal liability would have to arise from Veatch's arrest alone. The Supreme Court has not foreclosed the possibility that a single violation of a federal right may lead to municipal liability where "a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Brown*, 520 U.S. at 409. The need for training is "obvious" if the employee's violation involved a "clear constitutional duty," such that there were "clear constitutional guideposts for municipalities." *City of Canton*, 489 U.S. at 396-97 (O'Connor, J., concurring in part and dissenting in part). Although a municipality does not enjoy qualified immunity from liability based on the good faith of its officials, *Owen v. City of Independence*, 445 U.S. 622, 638 (1980), a municipality "cannot exhibit fault rising to the level of *deliberate* indifference to a constitutional right when that right has not yet been clearly established." *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 393 (8th Cir. 2007) (en banc).

As explained, the prevailing view is that the Constitution does not require that a misdemeanor offense must have occurred in the officer's presence to justify a warrantless arrest, *see, e.g.*, *Woods*, 234 F.3d at 995, and neither the Supreme Court nor this court has decided the question, so any "in the presence" requirement is far

from clearly established. Veatch has therefore failed to present sufficient evidence to show that the City acted with "deliberate indifference" by failing to train Leonard to refrain from making the arrest at issue in this case based on probable cause to believe that Veatch committed a misdemeanor assault.

*   *   *

The judgment of the district court is affirmed.

_____