# IN THE SUPREME COURT OF IOWA

No. 13–0417

Filed January 9, 2015

**MAXINE GAIL VEATCH,**

Appellant,

vs.

**CITY OF WAVERLY** and **JASON LEONARD,** individually and in his official capacity,

Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Bremer County, DeDra Schroeder, Judge.

The City of Waverly seeks further review of a court of appeals decision reinstating a plaintiff's false imprisonment claim against the City and one of its police detectives. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

John J. Hines and Laura L. Folkerts of Dutton, Braun, Staack & Hellman, P.L.C., Waterloo, for appellant.

Beth E. Hansen of Swisher & Cohrt, P.L.C., Waterloo, for appellees.

**HECHT, Justice.**

Staff members at a nursing home became concerned that a visiting family member had mistreated an elderly resident of the home and contacted the police. The visitor was arrested and charged with simple misdemeanor assault, but a jury acquitted her. After she was acquitted of the criminal charge, the visitor brought this civil action asserting negligence, false imprisonment, and malicious prosecution theories against the arresting officer and the city that employed him. The district court granted summary judgment in favor of the defendants. After the Iowa Court of Appeals reversed the summary judgment on the plaintiff's false imprisonment claim, the defendants sought, and we granted, further review. Because we conclude summary judgment was properly granted, we vacate the decision of the court of appeals and affirm the district court's ruling.

## I. Factual Background.

A reasonable fact finder viewing the summary judgment record in the light most favorable to Veatch could find the following facts. On September 27, 2006, Maxine Veatch and her sister visited their mother, Agnes Bell, at Woodland Terrace, a skilled-care residential nursing home facility in Waverly, Iowa.[1] Later that day, Janet Whiteside, a nurse employed by the nursing home, reported to her supervisor that she had observed Veatch shoving Bell into her wheelchair, wheeling her out of the staff's view, and screaming at her. Whiteside's supervisor directed Whiteside to write a report describing her observations and submit it to the nursing home director, Brianna Brunner.

---

[1]Veatch was designated by a durable power of attorney for health care as Bell's agent to make health care decisions.

Brunner took action after reading Whiteside's report. She forwarded the report to Debra Schroeder, the President and CEO of the nursing home's corporate owner. Brunner also directed two nurses to examine Bell for physical evidence of an injury. The nurses performed the examination and noted fresh bruising on Bell's knee and forearms.

Brunner relayed the substance of Whiteside's report to officer Thomas Luebbers of the Waverly Police Department. Officer Luebbers prepared a report based on his conversation with Brunner. Luebbers's report included allegations reported by Whiteside: that Veatch had shoved Bell into a wheelchair, wheeled Bell into her room, shut the door, and screamed at Bell—along with other observations giving rise to concerns that elder abuse was occurring.[2] The report also noted that, according to Brunner, Veatch and her sister held power of attorney for Bell. Officer Luebbers communicated his understanding of the incident to detective Sergeant Jason Leonard, who took over the investigation.

Sergeant Leonard's investigation took him to Woodland Terrace, where he discussed the incident with Brunner, Schroeder, and Jenny Kane, a nurse who supervised Whiteside and had observed Bell's bruises. The meeting between Sergeant Leonard and the staff lasted one to two hours. Sergeant Leonard asked to speak with Bell about the incident, but the three nursing home employees dissuaded him from doing so, suggesting Bell was reluctant to speak with people she did not know and would fear retaliation from Veatch for any cooperation with law enforcement. However, Sergeant Leonard learned the nursing home's

---

[2]Officer Luebbers's report documents Brunner's observation that Woodland Terrace staff members had heard Veatch and her sister screaming at Bell behind closed doors on several other occasions, and on one occasion had seen Veatch slap Bell's hand away as Bell was reaching out to use a hand rail.

employees had asked Dr. Lee Fagre, a physician, to conduct a physical examination of Bell and determine whether Bell's bruises corroborated Whiteside's account of the incident. Sergeant Leonard decided he would continue his investigation without interviewing Bell if he could obtain a written report documenting Dr. Fagre's examination and a copy of Whiteside's original incident report.

During the meeting at Woodland Terrace, Sergeant Leonard and the nursing home staff also reviewed documentation of previous alleged incidents involving Veatch and Bell and considered whether a temporary protective order protecting Bell from Veatch should be sought. Lastly, the meeting attendees, including Sergeant Leonard, requested assistance from an Iowa Department of Human Services (DHS) caseworker in investigating whether dependent adult abuse was occurring.

As Sergeant Leonard's investigation of Veatch's conduct continued, he received a telephone call from Kane relaying the results of Dr. Fagre's examination. Kane told Sergeant Leonard that Dr. Fagre had noted "thumbprint" bruises on Bell's forearms that appeared consistent with someone having forcibly held Bell's forearms to the wheelchair arms. Kane further reported Dr. Fagre had discovered a bruise on Bell's left buttock consistent with Whiteside's description of the incident and corroborating the allegation that Veatch had shoved Bell into her wheelchair.[3]

Sergeant Leonard asked Veatch to come to the police station for an interview. She complied. After briefly exchanging polite pleasantries, Sergeant Leonard explained he wanted to ask Veatch some questions

---

[3]This summary was consistent with Dr. Fagre's written report and his testimony at Veatch's subsequent criminal trial.

about a report that she had assaulted Bell at the nursing home. Veatch responded that she would not continue the interview without legal counsel. Veatch also told Sergeant Leonard she believed the allegations against her by the nursing home's staff were retaliatory in nature and were a response to Veatch's complaints about the quality of care provided to her mother by the staff. Sergeant Leonard acknowledged the request for counsel, left the interview room, and returned a few minutes later with a complaint charging Veatch with simple misdemeanor assault in violation of Iowa Code sections 708.1 and 708.2(6) (2005). He arrested Veatch and placed a phone call to DHS reporting he had done so. Veatch entered a plea of not guilty, and the case went to trial. A jury acquitted Veatch.[4]

## II. Procedural Background.

**A. Federal Court Proceedings.** Veatch filed a civil action in the United States District Court for the Northern District of Iowa against five defendants: the nursing home, two nursing home employees, the City of Waverly (the City), and Sergeant Leonard. *See Veatch v. Bartels Lutheran Home*, No. 08–CV–2044–LRR, 2009 WL 3270823, at *1 (N.D. Iowa Oct. 9, 2009). In her complaint consisting of twelve counts, Veatch asserted a claim under 42 U.S.C. § 1983 against Sergeant Leonard and the City, as well as a panoply of state law tort claims against each of the defendants. *See id.*

Sergeant Leonard and the City moved for summary judgment on the § 1983 claim. In its ruling on the motion, the federal district court focused on the question whether the arrest violated Veatch's rights under

---

[4]DHS conducted an administrative investigation of the incident as well. Although the agency initially determined the incident of dependent adult abuse was founded, the finding was later reversed by an administrative law judge.

the Fourth Amendment of the United States Constitution. The court noted "[f]or § 1983 purposes, an arrest for a misdemeanor does not require a warrant provided the arresting officer has probable cause," and therefore "the issue of probable cause is the 'determinative factor' to resolve the § 1983 claim." *Id.* at *7. Viewing the evidence in the summary judgment record in the light most favorable to Veatch, the court concluded the information Sergeant Leonard possessed "was sufficient to establish probable cause for Veatch's arrest because 'the facts and circumstances [were] sufficient to lead a reasonable person to believe that [Veatch] ha[d] committed' the assault." *Id.* (alterations in original) (quoting *United States v. Torres-Lona*, 491 F.3d 750, 755 (8th Cir. 2007)). Accordingly, the court granted the defendants' motion for summary judgment on the § 1983 claim.

After disposing of the § 1983 claim on the ground Sergeant Leonard had probable cause to arrest Veatch, the federal district court declined to rule on the remaining state law claims:

> "The Supreme Court has noted that, 'in the usual case in which all federal[ ] law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state[ ] law claims.'" *Johnson v. City of Shorewood*, 360 F.3d 810, 819 (8th Cir. 2004) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Accordingly, the court declines to exercise jurisdiction over Plaintiffs' state law claims against the City and Leonard.

*Id.* at *8 (alterations in original). The court dismissed the § 1983 claim with prejudice, and dismissed the remaining state law tort claims without prejudice.

On appeal, the United States Court of Appeals for the Eighth Circuit reached the same conclusion as the district court: "[T]he information that Leonard received during the course of his investigation

established probable cause" because it "was sufficiently reliable to establish a reasonable ground for belief that Veatch had committed a misdemeanor assault." *Veatch v. Bartels Lutheran Home* (*Veatch II*), 627 F.3d 1254, 1257–58 (8th Cir. 2010). The summary judgment was therefore affirmed. *Id.* at 1259.

**B. State Court Proceedings.** Veatch refiled her state law tort claims in the Iowa District Court for Bremer County. After the Eighth Circuit issued its ruling, Sergeant Leonard and the City moved for summary judgment on Veatch's claims for false imprisonment, negligence, and malicious prosecution. Sergeant Leonard and the City contended the federal court's ruling that Sergeant Leonard had probable cause to arrest Veatch—now decided with finality in the federal court—had preclusive effect and foreclosed each of Veatch's remaining tort claims. The district court agreed, concluding issue preclusion prevented the parties from relitigating whether Sergeant Leonard had probable cause to arrest Veatch. Having determined Veatch could not show Sergeant Leonard lacked probable cause to make the arrest, the district court concluded Veatch could not prevail on any of the tort theories she asserted.

Veatch appealed, and we transferred the case to the court of appeals. The court of appeals affirmed the district court's summary judgment ruling on the negligence and malicious prosecution theories. The negligence claim must fail, the court of appeals explained, because Iowa does not recognize a cause of action for negligent investigation of crime. *See Fitzpatrick v. State*, 439 N.W.2d 663, 667 (Iowa 1989); *Smith v. State*, 324 N.W.2d 299, 302 (Iowa 1982). The malicious prosecution claim must fail, the court further concluded, because the federal litigation had established as a matter of law that Sergeant Leonard had

probable cause to arrest Veatch for assault. *See Veatch II*, 627 F.3d at 1257–58; *see also Whalen v. Connelly*, 621 N.W.2d 681, 687–88 (Iowa 2000) (including "want of probable cause" among the elements of a malicious prosecution claim) (internal quotation marks omitted).

However, the court of appeals distinguished the federal court's probable cause determination from a determination that Sergeant Leonard *lawfully* arrested Veatch without a warrant under Iowa law. In particular, the court concluded the federal court's determination that Sergeant Leonard had probable cause to arrest Veatch under the Fourth Amendment standard is not preclusive of the question whether the arrest was valid under Iowa's warrantless arrest statute. *See* Iowa Code § 804.7(2) (authorizing a peace officer to make an arrest without a warrant "[w]here a public offense has in fact been committed, and the peace officer has reasonable ground for believing that the person to be arrested has committed it"); *id.* § 804.7(3) (authorizing a warrantless arrest when a peace officer has reasonable ground to believe an indictable offense has occurred and reasonable ground to believe the suspect committed it). The court of appeals concluded a genuine issue of material fact existed as to whether a public offense had *in fact* been committed within the meaning of section 804.7(2). Accordingly, the court held summary judgment should not have been granted on Veatch's false imprisonment claim.

The court of appeals also addressed an additional argument raised by Sergeant Leonard and the City as an alternative ground supporting summary judgment. This argument posited that section 804.7(3) provided independent authorization for the warrantless arrest because Sergeant Leonard had "reasonable ground for believing that an indictable public offense ha[d] been committed and ha[d] reasonable ground for

believing that [Veatch] ha[d] committed it." Iowa Code § 804.7(3). Conceding Veatch was arrested for simple misdemeanor assault—which is not an indictable offense[5]—the defendants contended Sergeant Leonard nonetheless had reasonable ground to believe Veatch had committed dependent adult abuse resulting in physical injury, an aggravated misdemeanor under Iowa Code section 235B.20(6). However, the court of appeals rejected this alternative contention, concluding Sergeant Leonard subjectively believed at the time of the arrest that Veatch had committed simple assault, not the indictable offense of dependent adult abuse.

Finally, the court of appeals addressed and rejected the assertion of Sergeant Leonard and the City that they are immune from tort liability under Iowa Code section 670.4. Citing our decision in *Thomas v. Gavin*, the court concluded section 670.4 does not bar claims for false arrest. *See Thomas v. Gavin*, 838 N.W.2d 518, 519 (Iowa 2013).

Having determined a fact question exists whether the warrantless arrest of Veatch was lawful under section 804.7(2) and that section 804.7(3) did not authorize a warrantless arrest in this case, the court of appeals reversed the summary judgment on the false imprisonment claim. Sergeant Leonard and the City requested, and we granted, further review.

### III. Scope of Review.

"We review a district court's ruling on summary judgment for correction of errors of law." *Thomas*, 838 N.W.2d at 521. A grant of summary judgment will be affirmed when the record shows "there is no

---

[5]*See* Iowa Code § 801.4(8) (" '*Indictable offense*' means an offense other than a simple misdemeanor.").

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting Iowa R. Civ. P. 1.981(3)) (internal quotation marks omitted). "In assessing whether summary judgment is warranted, we view the entire record in a light most favorable to the nonmoving party"—in this case, Veatch. *Crippen v. City of Cedar Rapids*, 618 N.W.2d 562, 565 (Iowa 2000). The nonmoving party is entitled to "every legitimate inference that the evidence will bear in an effort to ascertain the existence of a fact question." *Id.*

Insofar as our adjudication "involves the interpretation of a statutory provision . . ., our review is for correction of errors at law." *Jones v. State Farm Mut. Auto. Ins. Co.,* 760 N.W.2d 186, 188 (Iowa 2008) (quoting *Mortensen v. Heritage Mut. Ins. Co.,* 590 N.W.2d 35, 38 (Iowa 1999)) (internal quotation marks omitted).

## IV. The Parties' Positions.

Sergeant Leonard and the City contend Veatch's arrest was justified under either section 804.7(2) or (3). They also assert the decision of the court of appeals should be vacated and the district court ruling should be affirmed on immunity grounds under section 670.4.[6] Sergeant Leonard and the City further contend the district court's summary judgment ruling should be affirmed because we apply a less demanding probable cause standard in false arrest or false imprisonment[7] cases than is applied in criminal cases. *See Children v.*

---

[6]As we have noted, the district court relied on issue preclusion as the rationale for granting summary judgment, and did not reach the defendants' immunity defense. The court of appeals considered, but rejected, the immunity defense as a ground for summary judgment. Because we resolve this case on other grounds, we do not reach the immunity question.

[7]The torts of false imprisonment and false arrest have both elements in common. *See Rife v. D.T. Corner, Inc.*, 641 N.W.2d 761, 767 (Iowa 2002); *Kraft v. City of Bettendorf*, 359 N.W.2d 466, 469 (Iowa 1984). Accordingly, we consider the terms

*Burton*, 331 N.W.2d 673, 680 (Iowa 1983). Under this less demanding standard, the defendants contend, "[i]f the officer acts in good faith and with reasonable belief that a crime has been committed and the person arrested committed it, his actions are justified and liability does not attach." *Id.* Citing *Children*, Sergeant Leonard and the City posit that summary judgment was properly granted because the summary judgment record establishes—as a matter of law—that Sergeant Leonard acted in good faith and with reasonable belief that an indictable crime had been committed.[8]

In contrast, Veatch urges us to affirm the court of appeals decision. She contends the summary judgment ruling was flawed because a fact question exists as to whether her arrest was justified under section 804.7(2). Veatch further contends her arrest cannot be justified under section 804.7(3) because the reasonable ground standard under that section is a subjective one assessing only the arresting officer's state of mind at the time of the arrest. Noting that Sergeant Leonard arrested her for simple assault, Veatch emphasizes that Sergeant Leonard and the City did not claim any potential indictable offense as a ground for the arrest until the summary judgment proceedings in the district court.

---

interchangeable. *See Children v. Burton*, 331 N.W.2d 673, 678 (Iowa 1983) ("A false arrest is one way of committing the tort of false imprisonment . . . .").

[8]The availability of the good-faith defense in the context of this civil case must be distinguished from the concept of good faith as an exception to the exclusionary rule in the context of criminal cases. *See State v. Cline*, 617 N.W.2d 277, 292–93 & n.3 (Iowa 2000) (rejecting the good-faith defense as an exception to the exclusionary rule), *overruled on other grounds by State v. Turner*, 630 N.W.2d 601, 606 n.2 (Iowa 2001).

**V. Discussion.**

We conclude section 804.7(3) is dispositive. Although Sergeant Leonard and the City contended in the district court they are entitled to summary judgment because reasonable ground existed for the arrest under Iowa Code section 804.7(3), the court did not decide the summary judgment motion on that ground. Nonetheless, we can affirm the summary judgment on a ground not relied upon by the district court provided the ground was urged in that court and is also urged on appeal. *See In re Estate of Voss*, 553 N.W.2d 878, 879 n.1 (Iowa 1996); *Johnston Equip. Corp. of Iowa v. Indus. Indem.*, 489 N.W.2d 13, 16–17 (Iowa 1992).

**A. Applicable Legal Principles.** A peace officer may make a warrantless arrest under Iowa law when the officer has "reasonable ground for believing that an indictable public offense has been committed and . . . reasonable ground for believing that the person to be arrested has committed it." Iowa Code § 804.7(3). An indictable public offense is "an offense other than a simple misdemeanor." *Id.* § 801.4(8). We have previously stated the term "reasonable ground" in both prongs of section 804.7(3) is equivalent to probable cause. *Kraft v. City of Bettendorf*, 359 N.W.2d 466, 469 (Iowa 1984).

The statutory standard for warrantless arrests under Iowa law is not identical to the federal constitutional standard. *Compare* Iowa Code § 804.7(3) (requiring that an officer have reasonable ground to believe an indictable offense has been committed), *with Veatch II*, 627 F.3d at 1257 (noting the Fourth Amendment standard allows warrantless arrests if the officer has probable cause to believe *any* offense has been committed). Therefore, an arrest consistent with the probable cause standard under the Fourth Amendment will not automatically satisfy the statutory requirements for warrantless arrests under section 804.7.

We have held in a false arrest action that the standard for evaluating probable cause under section 804.7(3) is an objective one. *Children*, 331 N.W.2d at 679. In *Children*, we explained "[a] false arrest case involving the issue of probable cause turns on what the officer knew at the time of the arrest." *Id.* at 678. The relevant question is not what offenses Sergeant Leonard subjectively considered at the time he arrested Veatch, but rather what offenses a reasonable person armed with the same knowledge could have considered. *See id.* The focus of our reasonable ground inquiry must therefore be on the *facts* known to Sergeant Leonard, not merely the potential offenses he announced or subjectively considered at the time he made the arrest. *See id.* at 680 ("The significant point is that courts look to the facts within the officers' knowledge . . . ."). Accordingly, we reject Veatch's contention that because she was not arrested for an indictable offense or because Sergeant Leonard did not announce that an indictable offense was within the universe of potential offenses he considered at the time of the arrest, a genuine issue of material fact exists as to whether her arrest was justified under Iowa Code section 804.7(3).

Many other courts evaluating probable cause issues have concluded that, because probable cause is evaluated objectively, an arrest can be sustained by probable cause for a more serious offense than the crime the officer announced at the time of the arrest. *See, e.g.*, *United States v. Lester*, 647 F.2d 869, 873 (8th Cir. 1981) (upholding an arrest when "officers possessed sufficient information to make an arrest for assault but stated the ground for the arrest as detoxification"); *Klingler v. United States*, 409 F.2d 299, 304–05 (8th Cir. 1969) (determining a vagrancy arrest was also justified by probable cause to believe the defendant committed armed robbery); *Ralph v. Pepersack*, 335

F.2d 128, 133–34 (4th Cir. 1964) (finding probable cause to arrest the suspect for burglary and rape, and refusing to hold the arrest was illegal simply because officers identified the reason for the arrest as something less); *Ricehill v. Brewer*, 338 F. Supp. 1311, 1315 (S.D. Iowa 1971) (looking to the substance of events, not their form, and finding it "quite clear" that although police only arrested Ricehill for vagrancy—which is not an indictable offense—the available facts also provided the officer with probable cause to arrest for murder), *aff'd*, 459 F.2d 537, 540 (8th Cir. 1972); *Callahan v. State*, 557 So. 2d 1292, 1302 (Ala. Crim. App. 1989) ("Despite the fact that Callahan was initially arrested for a traffic offense, the fact remains that at that time there existed probable cause for his arrest for . . . murder . . . ."); *Reese v. State*, 243 S.E.2d 650, 652 (Ga. Ct. App. 1978) (holding that although the officer arrested the suspect for "prowling" near the scene of a reported sexual assault, the arrest could also have been made for rape); *State v. Julian*, 922 P.2d 1059, 1063 (Idaho 1996) (reviewing the record and determining officers had probable cause to make an arrest for aggravated battery, even though they in fact made the arrest for misdemeanor domestic battery). Today we do the same and hold that under Iowa Code section 804.7(3), an arrest is lawful if the facts available to the officer at the time of arrest provide reasonable ground for believing an indictable offense has occurred and the arrestee committed it—even if the officer announces a lesser offense as the reason for the arrest.

Having established that an indictable offense can support an arrest retrospectively, we now turn our attention to the indictable offense of dependent adult abuse. Iowa Code section 235B.20(6) provides: "A caretaker who recklessly commits dependent adult abuse on a person in violation of this chapter is guilty of an aggravated misdemeanor if the

reckless dependent adult abuse results in physical injury." Iowa Code § 235B.20(6). A "caretaker" under chapter 235B is "a related or nonrelated person who has the responsibility for the protection, care, or custody of a dependent adult as a result of assuming the responsibility voluntarily, by contract, through employment, or by order of the court." *Id.* § 235B.2(1). The term "dependent adult abuse" includes "[p]hysical injury to, or . . . assault of a dependent adult." *Id.* § 235B.2(5)(*a*)(1)(a). A "dependent adult" is "a person . . . who is unable to protect the person's own interests or unable to adequately perform or obtain services necessary to meet essential human needs, as a result of a physical or mental condition which requires assistance from another." *Id.* § 235B.2(4).

**B. Application of the Legal Principles.** With these principles in mind, we now turn to the defendants' contention that Sergeant Leonard had reasonable ground as a matter of law to believe Veatch had committed dependent adult abuse.

We first note it is unclear from the summary judgment record whether Veatch told Sergeant Leonard before she was arrested that she believed Woodland Terrace's allegations against her were retaliatory in nature. Viewing the record in the light most favorable to Veatch, we assume in our analysis that she told Sergeant Leonard of her retaliation theory before he made the arrest. We also give Veatch the benefit of an inference that Sergeant Leonard learned before the arrest that Veatch believed the accusations made by the Woodland Terrace staff were biased or otherwise unreliable because they were motivated by animus.

Notwithstanding the inferences we make in Veatch's favor, we conclude Sergeant Leonard had reasonable ground as a matter of law to arrest Veatch for dependent adult abuse. Assault of a dependent adult

by a caretaker qualifies as dependent adult abuse. Iowa Code §§ 235B.2(5)(*a*)(1)(a), .20(6). The federal court adjudication preclusively established that probable cause existed to arrest Veatch for assault. *Veatch II*, 627 F.3d at 1257–58; *see Fischer v. City of Sioux City*, 654 N.W.2d 544, 547 (Iowa 2002) (stating elements of issue preclusion). Thus, for the arrest to be justified under section 804.7(3), Sergeant Leonard must have had reasonable ground to believe (1) Veatch was a caretaker, and (2) Bell was a dependent adult. The summary judgment record leaves no disputed issues of material fact on those elements.

Veatch was designated by a durable power of attorney for health care as Bell's agent to make health care decisions. *See* Iowa Code § 144B.1(1) (defining "attorney in fact" as "an individual who is designated by a durable power of attorney for health care as an agent to make health care decisions on behalf of a principal and has consented to act in that capacity"). Further, it is undisputed on this record that Bell was, at all material times, a dependent adult as defined under Iowa Code section 235B.2(4). Additionally, as we have already noted, Sergeant Leonard's prearrest meeting with the Woodland Terrace staff lasted between one and two hours, allowing time to gather information about the alleged incident involving Veatch.

Sergeant Leonard did not rely solely on information from Woodland Terrace staff to arrest Veatch. Instead, he waited to make the decision to arrest until after he received word that Dr. Fagre's examination of Bell indicated bruising ostensibly consistent with the allegations against Veatch. In false arrest cases decided by several other courts, an investigation of the nature and extent conducted by Sergeant Leonard has been viewed as supportive of a finding of probable cause. *See, e.g.,* *Panetta v. Crowley*, 460 F.3d 388, 391–93, 397–99 (2d Cir. 2006) (finding

probable cause as a matter of law when an officer personally observed an allegedly mistreated horse rather than relying solely on the walk-in complaint he received); *Hebron v. Touhy*, 18 F.3d 421, 422–23 (7th Cir. 1994) (affirming summary judgment on the probable cause issue when officers responding to a landlord–tenant dispute recognized the likelihood the tenant bore a grudge and investigated further before making an arrest); *Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 133–35 (E.D.N.Y. 1998) (finding probable cause for arrest as a matter of law when an officer did not simply take at face value statements provided by either spouse in the midst of an acrimonious divorce).

We acknowledge that a contentious history between a complainant and the arrestee can sometimes engender a fact question as to whether probable cause supported an arrest. *See Kraft*, 359 N.W.2d at 470; *see also Sankar v. City of New York*, 867 F. Supp. 2d 297, 306–07 (E.D.N.Y. 2012) (holding when an officer "was aware of the contentious relationship that existed between [the witness] and [the arrestee]," a reasonable juror could conclude the police lacked probable cause to arrest); *Roach v. Marrow*, No. 3:08–CV–1136, 2012 WL 1059741, at *7 (M.D. Pa. Mar. 28, 2012) ("[B]ecause the record is unclear as to what [the officer] knew about . . . Plaintiff[']s contentious relationship with [the complainant], and drawing all reasonable inferences in favor of Plaintiff, the Court concludes that there is a dispute as to whether there was probable cause because [the officer] interviewed only those witnesses who may have had ulterior motives for giving their statements."). In *Kraft*, for example, we concluded a fact question existed on the probable cause question when arresting officers knew about preexisting animosity between a complainant and the person arrested for assault following a barroom fight. *Kraft*, 359 N.W.2d at 470. Despite the officers' knowledge of the

complainant's animus, they nonetheless relied solely on his biased account of the fight in making an arrest without additional investigation. *Id.* at 468.

But this case is clearly distinguishable from *Kraft*. There, the arresting Bettendorf police officers arrived just after a fight had ended in a bar between the plaintiff and an off-duty, obviously intoxicated Bettendorf police officer. *Id.* at 468. The officers knew their colleague bore a longstanding animosity toward the plaintiff. *Id.* at 470. Yet, they arrested the plaintiff after speaking for less than a minute to this intoxicated, off-duty officer alone, without getting the account of any other witness in the bar. *Id.* at 468. In sharp contrast, Sergeant Leonard met with representatives of Woodland Terrace for more than an hour, and did not arrest Veatch until after he had received confirmation that Dr. Fagre had found bruises on Bell's body consistent with the complainants' version of the events. Upon our review of the summary judgment record in this case, we conclude a reasonable person could not find the relationship between Veatch and the Woodland Terrace staff was so contentious or affected by animus as to create a genuine issue of fact on the question of whether Sergeant Leonard had reasonable ground to believe the offense of dependent adult abuse had been committed, and that Veatch had committed it.

## VI. Conclusion.

We conclude as a matter of law that reasonable ground existed to arrest Veatch for the indictable offense of dependent adult abuse. Therefore, Veatch's false imprisonment claim must fail as a matter of law. Accordingly, we do not reach the question whether the arrest was valid under section 804.7(2), or whether the defendants' claims of statutory immunity are meritorious. We vacate the decision of the court

of appeals and affirm the district court's order granting summary judgment in favor of the defendants.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**